The STATE HISTORICAL SOCIETY of Wisconsin, a body politic and corporate, State of Wisconsin Investment Board, a body corporate, Plaintiffs-Respondents,

v.

VILLAGE OF MAPLE BLUFF, a municipal corporation, and First Wisconsin National Bank of Madison, a national banking association, Defendants-Appellants.

Supreme Court

*No. 81–2292. Argued March 30, 1983.—Decided April 26, 1983.*

(Also reported in 332 N.W.2d 792.)

For the defendants-appellants there were briefs by *Ronald W. Todd* and *Stroud, Stroud, Willink, Thompson & Howard,* Madison, and oral argument by *Mr. Todd.*

For the plaintiffs-respondents the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

STEINMETZ, J. This case involves the interpretation of sec. 893.15, Stats. (1977) [1] (now sec. 893.33), com-

[1] Sec. 893.15(1) and (4), Stats. (1977), provides as follows:

"893.15 **Action concerning real estate.** (1) Except as provided in sub. (5), no action affecting the possession or title of any real estate shall be commenced by any person, the state, or any sub-

monly referred to as the thirty-year statute. Specifically, we are being asked to interpret the public entity exception to the statute. That exception states "nor does

division thereof after January 1, 1943, which is founded upon any unrecorded instrument executed more than 30 years prior to the date of commencement of such action, or upon any instrument recorded more than 30 years prior to the date of commencement of the action, or upon any transaction or event occurring more than 30 years prior to the date of commencement of the action, unless within 30 years after the execution of such unrecorded instrument or within 30 years after the date of recording of such recorded instrument, or within 30 years after the date of such transaction or event there is recorded in the office of the register of deeds of the county in which the real estate is located, some instrument expressly referring to the existence of such claim, or a notice setting forth the name of the claimant, a description of the real estate affected and of the instrument or transaction or event on which such claim is founded, with its date and the volume and page of its recording, if it be recorded, and a statement of the claims made. This notice may be discharged the same as a notice of pendency of action. Such notice or instrument recorded after the expiration of 30 years shall be likewise effective, except as to the rights of a purchaser for value of the real estate or any interest therein which may have arisen prior to such recording.

"(4) This section shall be construed to effect the legislative purpose of barring all claims to an interest in real property, whether dower (which for the purpose of this section shall be considered as based on the title of the husband without regard to the date of marriage) inchoate or consummate, curtesy, remainders, reversions and reverter clauses in covenants restricting the use of real estate, mortgage liens, old tax deeds, inheritance, gift and income tax liens, rights as heirs or under wills, or any claim of any nature whatsoever, however denominated, and whether such claims are asserted by a person sui juris or under disability, whether such person is within or without the state, and whether such person is natural or corporate, or private or governmental, unless within such 30-year period there has been recorded in the office of the register of deeds some instrument expressly referring to the existence of such claim, or a notice pursuant to this section. This section does not apply to any action commenced by any person who is in possession of the real estate involved as owner at the time the action is commenced, nor does this section apply to any

this section apply to any real estate or interest therein while the record title thereto remains in the state or any political subdivision or municipal corporation thereof."[2]

The facts of this case are not disputed by the parties. On March 16, 1918, the trustee under the will of George B. Burrows conveyed a parcel of real estate 250 feet by 300 feet to the Joint School District No. 1 of the Towns of Madison and Burke. The deed contained a reversionary clause, which provided:

"It is part of the consideration for the sale and conveyance of said premises, that the premises shall be used solely for school purposes and other matters usually incident thereto, and for no other purposes whatever, and that in the event of the use of said premises for any other than for the purposes aforesaid, the said party of the first part shall be at liberty to return to said party of the second part the purchase money for said premises, but without interest thereon, and upon such return to have and to receive from the party of the second part, its successors or assigns, a re-conveyance to him, his successors or assigns of the premises hereinbefore de-

real estate or interest therein while the record title thereto remains in a railroad corporation or a public service corporation as defined in s. 184.01, or any trustee or receiver thereof, or to claims or actions founded upon mortgages or trust deeds executed by such corporations, or trustees or receivers thereof; *nor does this section apply to any real estate or interest therein while the record title thereto remains in the state or any political subdivision or municipal corporation thereof.*" (Emphasis added.)

[2] Sec. 893.15, Stats. (1977) was repealed and recreated by ch. 323, Laws of 1979 as sec. 893.33. The language of the public entity exception was amended to read: "This section also does not apply to real estate or on interest in real estate while the record title to the real estate or interest in real estate remains in the state or a political subdivision or municipal corporation of this state." Sec. 893.33(5). The parties both concede, and we agree, that this amendment does not substantively change the provisions relevant to this appeal, but only involves a clarification of the language. *See* Judicial Council Committee's Note 1979, 40K West's Wis. Stats. Annot. sec. 893.33 (1982–83 Pocket Part).

scribed, and that thereupon the conveyance by the said party of the first part to the said party of the second part shall be cancelled and held for naught."

The deed was properly recorded on July 1, 1922.

On June 22, 1922, final judgment was entered in the trust estate which assigned the trust property to the State Historical Society of Wisconsin. The final judgment described, in the form of a recital, numerous items of personal property and many parcels of real estate comprising the trust estate. It did not specifically list the reversionary right mentioned in the 1918 deed, but did assign to the State Historical Society "all the rest and residue of said trust estate, of whatever nature or kind or wherever situated in the possession or control of said trustee . . . ." The final judgment was recorded on January 17, 1923.

On July 1, 1962, Joint School District No. 1 was taken over by the Madison City School District. Title to the property was held by the city of Madison. On April 24, 1978, the Madison City School District, by then known as the Madison Metropolitan School District, declared the property "surplus." On June 7, 1979, following various meetings and letters, the State Historical Society tendered $3,800 to the Madison Metropolitan School District and demanded conveyance of the property to the State Historical Society. The demand was refused.

On July 27, 1979, the Village of Maple Bluff entered into a contract with the Madison Metropolitan School District to purchase the property and the adjoining real estate for $164,900, and on December 11, 1979, the purchase was completed. On December 12, 1979, a deed from the city of Madison to the defendant village of Maple Bluff was recorded and the village's purchase money mortgage to the defendant First Wisconsin National Bank of Madison was recorded. No instrument or notice referring to the existence of the claim of the State Historical

Society has appeared on record subsequent to the recording of the original deed in 1922. On January 24, 1980, the plaintiff State Historical Society commenced this action seeking a declaration of its rights in the real estate in question. On July 29, 1980, the defendants filed a motion for summary judgment which contended in part that the plaintiffs were barred from asserting their claim under the 1918 deed because of the provisions of sec. 893.15, Stats. (1977).

The trial court ruled that the real estate in question was not subject to the provisions of sec. 893.15, Stats. (1977), because record title to the real estate was in a municipal corporation, hence the real estate was excepted from the statute. This court accepted the defendants' appeal on certification from the court of appeals.

The sole issue for determination in this appeal is whether the defendant can use the provisions of sec. 893.-15, Stats. (1977) to bar the plaintiffs' claim to real estate under the 1918 deed. To phrase it another way, the issue is whether the exception listed in sec. 893.15(4) for real estate owned by public entities is intended only as a protection for the public entity by allowing it to bring claims which are older than thirty years; or whether the exception for real estate owned by public entities also bars the public entities from raising the statute as a defense against claims of others which are older than thirty years.

It is important to state the issues we are not concerned with on this appeal. First, we are not dealing with the question of whether the State Historical Society itself is an excepted public entity under sec. 893.15(4), Stats. (1977). The trial court did not consider that issue and the parties have removed it from appeal by stipulation. Second, we are not concerned with the question of whether the plaintiffs are the owners of the reversionary interest under the Burrow's will. The trial court did not decide this issue, and the parties have also removed this

issue from the appeal by stipulation. With these questions removed, we only need to discuss the issue of whether the public entity exception bars the defendants from arguing that the plaintiffs' claim is older than thirty years.

Sec. 893.15, Stats. (1977) is in the nature of a statute of limitations which bars actions affecting title to real estate which are based on instruments executed or recorded more than thirty years prior to the commencement of the action. The statute's purpose was to protect purchasers from stale claims and make record title more marketable. *State v. Barkdoll,* 99 Wis. 2d 163, 173, 298 N.W.2d 539 (1980). *Herzog v. Bujniewicz,* 32 Wis. 2d 26, 32, 145 N.W.2d 124 (1966). It was designed "to simplify and shorten examinations of record titles and otherwise reduce the legal costs incident to the sale of real estate." Tulane, *Title to Real Property—Thirty Year Limitation Statute,* 1942 Wis. L. Rev. 258, 259. *See also* Notes and Comments, *Conveyances—Section 330.15—The "Thirty-Year" Statute,* 1947 Wis. L. Rev. 681.

The thirty-year statute was created by ch. 293, Laws of 1941 and first appeared as sec. 330.15, Stats. (1941). When initially enacted the statute contained only one exception—the "owner in possession" exception. In 1943, the statute was amended and excepted real estate where record title was in railroad corporations or public service corporations. Another portion of the amendment also excepted real estate where record title was in a specified public entity. Ch. 109, Laws of 1943. Only the public entity statutory exception is at issue in this case.

On any question of statutory construction, the initial inquiry is to the plain meaning of the statute. If the statute is unambiguous, resort to judicial rules of in-

terpretation and construction is not permitted, and the words of the statute must be given their obvious and intended meaning. *Wis. Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis. 2d 438, 450, 291 N.W.2d 869 (1980). A statute, phrase or word is ambiguous when it is capable of being interpreted by reasonably well-informed persons in either of two or more ways. *Id.* at 450. The plaintiffs contend, and the trial court held, that the provisions of sec. 893.15(4), Stats. (1977), unambiguously preclude the defendants from relying on sec. 893.15(1). The trial court reasoned that since the real estate in the instant case was owned by a specified public entity, the defendants could not use sec. 893.15 to bar the plaintiffs' claim. The trial court concluded that the plaintiffs were entitled to raise their claim of a reversionary interest, even though it was based on a deed older than thirty years.

The defendants contend that the statutory exception is ambiguous. We agree that the exception is ambiguous and that an examination of the exception's legislative history is appropriate to arrive at an interpretation which achieves legislative intent.[3] *Tanck v. Clerk, Middleton Jt. School Dist.,* 60 Wis. 2d 294, 305, 210 N.W.2d 708 (1973). However, we find that the legislative history does not support the defendant's interpretation. The extrinsic materials demonstrate that the legislature intended to except the real estate at issue from the thirty-year statute.

The defendants argue that the legislative history demonstrates the statutory exception for public entities was intended solely for their benefit, not to penalize them.

[3] This writer believes that the statute is unambiguous. In *State v. Barkdoll,* 99 Wis. 2d 163, 171, 298 N.W.2d 539 (1980), we noted that sec. 893.15, Stats. (1977) was a long and complicated statute and was not written as clearly as it might have been. Such a conclusion, in my view, does not necessarily mean that a statute is ambiguous.

The defendants base their legislative history interpretation on the premise that the exception was intended to help and not hurt the excepted public entities. To support their contention, the defendants point out that the exception for railroad corporations and public service corporations was enacted pursuant to requests by the corporations themselves to eliminate the burden of rerecording their interests every thirty years. Since the requests were granted, the defendants conclude that all exceptions in the statute should be read as solely for the benefit of the excepted entities.

We agree that the purpose of the exceptions to the statute was to relieve certain entities from the onerous burden of rerecording their claims to real estate. However, there is no evidence in the legislative history to indicate that excepted entities were only to benefit from the statute. The legislature chose to except *all* real estate owned by the specified entities; it did not give the entities the right to rely on the statute only when it was to their advantage, and the right to deny its application when it was to their detriment. If the legislature wishes to benefit and not penalize public entities by this statute, it should clearly state that objective and avoid ambiguous language.

Commentators have stated that the intent of the exception for real estate owned by public entities in sec. 893.15 (4), Stats. (1977), was to exclude certain specified interests from the operation of the statute altogether. Aiken, *Proposed Title Legislation: A Suggested Solution to the Problem of "Marketable Title,"* 50 Marq. L. Rev. 15, 48 (1966). Professor Aiken noted:

"Interests of governmental units and public utilities are, by subsection (3) (a), generically excluded from the operation of the proposed statute. The justification of the exclusion, which also appears in section 330.15, is

the manifest impracticality of protecting the typical land-interests of such entities against a 'nonrecording' statute. To record claims in the nature of highway easements, to cite but a single example, would involve a complication of metes and bounds description of such size as to choke the facilities of the average register of deeds office."

*See also* Hoyt, *The Thirty-Year Law Relating to Real Estates Titles,* 6 The Gavel 4 (July 1945), where one of the drafters of the statute stated the exclusion for real estate owned by public entities makes the statute "wholly inapplicable" to such real estate.

The only ascertainable intent of sec. 893.15(4), Stats. (1977), is to relieve certain public entities from the burden of rerecording. The method the legislature chose to achieve that objective was to entirely except from the provisions of sec. 893.15 the real estate owned by those entities.

This interpretation of legislative history is confirmed by the drafter's notes to the 1979 amendments to the statute. These notes state in part: "It is unclear to me whether the exclusion in section 893.15(4) of the statutes, last clause, applies only to actions asserted by the state or also to actions asserted against the state. The draft assumes the latter." Legislative Reference Bureau drafting records of ch. 323, Laws of 1979. These notes can be used to aid the court in ascertaining legislative intent, even though this legislative history occurred subsequent to the enactment of the statute. *See* Comment, *Statutory Construction—Legislative Intent—Use of Extrinsic Aids in Wisconsin,* 1964 Wis. L. Rev. 660, 665; *Nekoosa-Edwards P. Co. v. Public Serv. Comm.,* 8 Wis. 2d 582, 99 N.W.2d 821 (1959). The notes lend weight to the plaintiffs' contention that the legislature intended to entirely exclude the real estate interests of the specified public entities from the operation of sec. 893.15 Stats. (1977).

In conclusion, we hold that the real estate in question is excluded from the provisions of sec. 893.15, Stats. (1977). Therefore, the defendants in the instant case cannot rely on the provisions of this statute to bar the plaintiffs' claim based on the reversionary interest granted to it by the 1918 deed.

*By the Court.*—The judgment of the circuit court is affirmed.

HEFFERNAN, J., took no part.