Dr. Bernard A. MOGILKA, Plaintiff-Respondent,

William JUDGE, Purchaser-Respondent,

v.

Ralph J. JEKA and Ruth Jean Jeka,
Defendants-Appellants and Cross-Respondents,

Patrick T. SHEEDY, as Personal Representative
of the Estate of Nan Lowe and Bernice Degner,
as Personal Representative of the Estate of
Lucille Kaminski, Defendants and Cross-
Appellants,

UNITED STATES OF AMERICA INTERNAL
REVENUE SERVICE, Defendant and Cross-
Respondent,

State of WISCONSIN DEPARTMENT OF
REVENUE, Girard Bank, a foreign banking
corporation, Edward Monday, Lawrence A.
Czaplewski, Herbert A. Genthe, City of
Milwaukee, County of Milwaukee, Village of
Fox Point, Towne Realty, Inc., Christine
Hofmeister, and Northwestern National Co.,
Defendants.†

Court of Appeals

*No. 85–0912. Submitted on briefs March 4, 1986.—Decided
April 16, 1986.*

(Also reported in 389 N.W.2d 359.)

† Petition to review denied (voluntarily dismissed).

459

For the defendants-appellants and cross-respondents the cause was submitted on the briefs of *Ralph J. Jeka* and *Ruth Jean Jeka,* of Milwaukee.

For the defendants and cross-appellants Patrick T. Sheedy, personal representative of estates of Lucille Kaminski and Nan Lowe the cause was submitted on the briefs of *Michael T. Sheedy,* of Milwaukee.

For the defendants and cross-appellants estates of Nan Lowe and Lucille Kaminski the cause was submitted on the briefs of *Michael T. Sheedy,* with *Techmeier, Sheedy & Associates,* of counsel, of Milwaukee.

For the defendant and cross-respondent the cause was submitted on the briefs of *Joseph P. Stadtmueller,* United States Attorney and *Elsa C. Lamelas,* Assistant United States Attorney, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   This appeal and cross-appeal arise from a trial court order confirming the foreclosure sale of the homestead of Ralph J. Jeka (Ralph) and his wife, Ruth Jean Jeka (Ruth). The Jekas appeal from those parts of the order denying Ruth's claim to a

homestead exemption and granting a homestead exemption to Ralph despite his waiver. The estates of Nan Lowe and Lucille Kaminsky (the Estates) cross-appeal from those parts of the order providing first priority status to tax liens of the United States Internal Revenue Service (IRS) and denying William Judge (Judge), the successful bidder at the sheriff's sale, the right to use the Estates' judgments against Ralph as partial satisfaction of the bid price.

Because Ruth had standing to assert her homestead rights and did not waive these rights through inaction, and because Ralph properly waived his homestead exemption, we reverse the order and remand to the trial court with directions to determine the extent of Ruth's homestead exemption. Because the IRS tax liens were valid and enforceable, and because Judge had no statutory authority to use the Estates' judgments to pay part of the bid price, we affirm those parts of the trial court's order.

To facilitate an understanding of the issues presented in this appeal, a brief recitation of the procedural history is in order. Dr. Bernard A. Mogilka (Mogilka) commenced a mortgage foreclosure action against the Jekas.[1] The real estate involved was the Jekas' residence and homestead. The Jekas did not contest the claim and a default judgment was entered against them. Because Mogilka's mortgage claim was only $42,575.53, Judge's successful bid of $69,942.67 at the foreclosure sale created a surplus. Mogilka moved to confirm the sheriff's sale and, contemporaneously,

---

[1] Actually, this case concerns the second foreclosure action instituted against the Jekas' homestead. The first action was reviewed by this court in *South Carolina Equipment, Inc. v. Sheedy,* 120 Wis. 2d 119, 353 N.W.2d 63 (Ct.App. 1984).

the IRS moved to obtain the surplus funds to satisfy its tax liens. The trial court scheduled a hearing for February 11, 1985. The IRS, the Estates, and the Jekas filed claims for the surplus money. Ralph also made an oral claim for a homestead exemption at the February 11 hearing. One week later he filed a homestead claim for both Ruth and himself, but he alone signed it.

At the February 11 hearing Ralph asserted that Ruth, a joint owner, was not responsible for any of the tax liens or judgments on the property and that, consequently, she should receive one-half of the surplus sales proceeds. The trial court confirmed the sheriff's sale but declined to rule on the priority of claims and adjourned the case until February 27. The court requested that the parties be prepared to address Ralph's homestead exemption and Ruth's claim to any surplus funds. Subsequent to the February 11 hearing, the trial court signed an order confirming the sale and permitting Judge to pay the bid price in the form of cash and/or satisfaction of the judgments held by other judgment creditors in the foreclosure action, i.e., the Estates. On February 27, however, the trial court reversed itself as to the acceptable manner of payment and vacated the order confirming the sale. The trial court then adjourned the matter until April 1, 1985, when it would address the applicability of the statutory homestead exemption to a tax lien, the timing of homestead claims in foreclosure proceedings, and whether Ruth's failure to appear had deprived her of standing to assert her homestead exemption. On March 4, 1985, Ruth filed both a claim asserting her homestead rights and a notice of claim to surplus monies. In the same document, Ralph withdrew his claim to a homestead exemption.

After the April 1 hearing, the trial court entered an order that reconfirmed the foreclosure sale, vacated Judge's partial payment by satisfaction, granted a homestead exemption to Ralph, and denied standing to Ruth to claim a homestead exemption. The court further ordered that Ralph's $25,000 homestead exemption be disbursed to those entities holding tax liens against him and that any remaining surplus be placed in a trust account with the clerk of court.

## THE JEKAS' HOMESTEAD CLAIM

On appeal, the Jekas claim that the trial court erred in ruling that Ruth did not have standing to claim a homestead exemption. In considering this issue, the trial court made the following findings:

> On March 4, 1985, a Notice of Claim to Surplus Monies and Consent allegedly bearing the signature of defendant Ruth J. Jeka was filed in this action.
>
> Defendant Ruth J. Jeka has not appeared *pro se* or by an attorney at any hearing before the Court or in connection with the homestead exemption. In light of her failure to appear *pro se* or by an attorney at the hearings held in connection with this matter the Court cannot ascertain defendant Ruth J. Jeka's position concerning the homestead exemption, or even whether the signature on the above-referenced Notice is legitimate.

On the issue of Ruth's failure to appear, we initially note that allegations with respect to homestead rights "in law constitute a general appearance." *Northwestern Securities Co. v. Nelson,* 191 Wis. 580, 586, 211

N.W. 798, 800 (1927). Standing is a question of law which this court reviews independently. *State v. Wisumierski,* 106 Wis. 2d 722, 733, 317 N.W.2d 484, 489 (1982). Under Wisconsin's law of standing, we must determine whether the petitioner was injured in fact, and whether the interest allegedly injured is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Moedern v. McGinnis,* 70 Wis. 2d 1056, 1067, 236 N.W.2d 240, 245 (1975) (citation omitted).

Doubtless, denying Ruth a homestead interest in the surplus funds resulting from the sheriff's sale caused her injury in fact. As to whether her homestead claim is within a protected zone of interest, we first look to the relevant statutes. Section 815.20(1), Stats. (1981),[2] provides in part:

> An exempt homestead . . . shall be exempt from execution, from the lien of every judgment and from liability for the debts of [its] owner to the amount of $25,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. Such exemption shall not be impaired by . . . the sale [of the homestead] but shall extend to the proceeds derived from such sale to an amount not exceeding $25,000, while held, with the intention to procure another homestead therewith, for 2 years. Such exemption extends to land owned by husband and wife jointly or in common, and when they reside in the same household *may be claimed by either or may be divided in any proportion between them,* but in no event shall the

[2] This statute was amended by 1983 Wis. Act 186, effective January 1, 1986.

exemption exceed $25,000 for such household. [Emphasis added.]

As for the disbursement of surplus monies derived from a foreclosure sale, sec. 846.162, Stats., states in part:

> Disposition of surplus. If there shall be any surplus . . . *any party to the action* or any person not a party who had a lien on the mortgaged premises at the time of sale, *may file* with the clerk of court into which the surplus was paid, *a notice stating that he is entitled to such surplus money or some part thereof,* together with the nature and extent of his claim. [Emphasis added.]

■

It is well-settled that the public policy of this state strongly favors the liberal construction of the homestead statutes in favor of the debtor, and that homestead rights are preferred over the rights of creditors. *Schwanz v. Teper,* 66 Wis. 2d 157, 163, 223 N.W.2d 896, 899 (1974). The homestead exemption prevents a person from being deprived of the means to enjoy the necessary comforts of life. *Reckner v. Reckner,* 105 Wis. 2d 425, 429 n.7, 314 N.W.2d 159, 162 n.7 (Ct.App. 1981); *see* Wis. Const. art I, sec. 17.

■

Because it cannot be gainsaid that Ruth's interest was within the zone protected by the homestead statutes, she undeniably had standing to assert her homestead rights, and the trial court erred in arbitrarily rejecting her claim.[3] The real issue is whether Ruth

---

[3] The trial court in its findings of fact stated that because Ruth failed to appear *pro se* or by counsel, it could not ascertain "whether

waived her homestead exemption. *See Reckner*, 105 Wis. 2d at 435, 314 N.W.2d at 164–65. We therefore must determine whether Ruth brought her homestead claim in a timely manner. In *Northwestern Securities Co.*, 191 Wis. at 584, 211 N.W. at 799–800, our supreme court upheld the claim of joint mortgage debtors who did not assert their homestead rights until after the confirmation of the sheriff's sale:

> An adjudication in the judgment that the mortgaged property constituted the homestead of the mortgagors would definitely, under the provisions of the statutes, have stamped the proceeds as exempt, and would have precluded the application of any of these proceeds to the payment of general judgment creditors. In other words, the surplus would belong to the mortgage debtors. Therefore, after the sale, when the surplus was paid into court, the homestead rights, if any, or the rights to the proceeds, still remained open and undetermined.

In *Lueptow v. Guptill*, 56 Wis. 2d 396, 404, 202 N.W.2d 255, 260 (1972), the court reaffirmed the same liberal policy: "This court has long held that the right to the homestead exemption does not depend upon its formal

---

the signature on the claim was hers." No challenge to the signature appears in the record. There is no evidence to support a finding that the signature was forged or unauthorized. The statutory presumption of validity, sec. 891.25, Stats., was therefore not rebutted. *Cf. Jax v. Jax*, 73 Wis. 2d 572, 588–89, 243 N.W.2d 831, 840 (1976); *see* sec. 403.307(1), Stats. ("Unless specifically denied in the manner provided in s. 891.25 each signature on an instrument is admitted.") It appears that the trial court, under the guise of its discretionary power, accorded no weight to the signature on Ruth's claim. Because nothing in the record rebuts the presumed authenticity of Ruth's signature, we conclude that the trial court misused its discretion.

exercise." Rather, there is a "strong public policy to protect the homestead exemption, even in the face of inaction." *Anchor Savings & Loan Association v. Week,* 62 Wis. 2d 169, 175, 213 N.W.2d 737, 739 (1974). Thus, the *Anchor Savings* court concluded that a mortgagor may assert his or her homestead right as late as the time the surplus is distributed. *Id.* at 176, 213 N.W.2d at 740; *see* sec. 846.162, Stats.

In the instant case, the record reveals that both Ralph and Ruth were named parties in this foreclosure action, that both signed the mortgage document and note, and that both used the mortgaged premises as their homestead. Ruth did not assert her homestead rights until March 4, 1985, after the sheriff's sale. The trial court, however, vacated its order confirming this sale on February 27, 1985. It did not reconfirm the sale until the April 1, 1985 hearing. Thus, Ruth's assertion of her homestead rights, as well as Ralph's waiver of his homestead rights, were made in a timely manner. We therefore remand that part of the trial court's order assigning a homestead exemption to Ralph with directions that the trial court instead award the exemption to Ruth, then determine whether she has nonexempt liabilities pursuant to sec. 815.20(1), Stats. (1981).[4]

---

[4] In remanding this issue to the trial court, we note that under the *Schwanz* rule a court cannot order exempt property held by the clerk of court. 66 Wis. 2d at 163, 223 N.W.2d at 899. Although it is true that the debtor mortgagors in both *Schwanz* and *Reckner* indicated that they intended to use at least some of their exempt proceeds to procure a new homestead, thus meeting the statutory directive of sec. 815.20(1), Stats. (1981), we cannot evade the explicit conclusion of the *Schwanz* court: "While the court may have done what it thought was the fairest way to handle the case, it was in error. The [homestead claimant] was entitled to the exemption and

## USE OF JUDGMENT SATISFACTIONS

On cross-appeal, the Estates first claim that the trial court erred in deciding that Judge could not use the Estates' satisfactions of judgments against Ralph as part payment to secure Judge's bid. The Estates assigned these to Judge. They argue that his use of these assignments was permitted by sec. 846.16(2), Stats. That section states:

> If the judgment creditor is the purchaser he may give his receipt to the sheriff or referee for any sum not exceeding his judgment and such receipt shall be deemed a down payment, but in every case the purchaser shall pay the cost of sale; and if the sum due the creditor is less than the purchase price, he shall pay the difference at the time of sale.

The Estates contend that Judge, as the assignee of their judgments, became a judgment creditor who could use the judgments to pay part of his bid price rather than tendering full payment in cash. We disagree.

██ The interpretation of a statute in relation to a set of undisputed facts is a question of law which this court may review without deference to the trial court. *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985). We initially note that in this case the trial court changed its position on the applicability of sec. 846.16(2), Stats. It first allowed Judge to tender the Estates' judgment satisfactions, but then reversed itself with the following comments:

the court could not order it held by the clerk of court." *Id.* at 163, 223 N.W.2d at 900.

[I]n effect, allowing Mr. Judge to pay with the satisfaction of the estates is in fact circumventing the positions of the parties and the ultimate duty of this Court. It's a shortcut method of trying to give the estates . . . their money above and beyond the priorities, above and beyond the homestead exemption and any taxing. And the Court would find, as a matter of law, it's not . . . allowed pursuant to Section 846.16(2), . . . .

. . . .

I know what it reads, [Counsel for the Estates], but doesn't it really in effect usurp what this Court is doing here today—talking about homestead rights and talking about tax liens . . . . It's jumping your clients and that's what I am talking about.

■

Essentially, the Estates' interpretation of sec. 846.16(2), Stats., would permit a junior lienholder to "piggyback" its claim onto the purchaser's bid in order to supersede a senior lienholder. We agree with the trial court that this ploy would circumvent the time-honored protective filing rule of "first in time, first in right" in the liquidation of judgment creditor liens.

■

A plain reading of sec. 846.16, Stats., supports this conclusion. On any question of statutory construction, the initial inquiry is to the plain meaning of the statute. *State Historical Society v. Village of Maple Bluff,* 112 Wis. 2d 246, 252, 332 N.W.2d 792, 795 (1983). If the statute is unambiguous, resort to judicial rules of interpretation and construction is not permitted, and the words of a statute must be given their obvious and intended meaning. *Id.* at 252–53, 332 N.W.2d at 795. Section 846.16 relates to the notice and report required in

472

foreclosure sales. Subsection (2) clearly reads that if the judgment creditor, i.e., the creditor having the foreclosure judgment, is the successful bidder at the foreclosure sale, he or she may tender a receipt for any sum of money not exceeding the judgment as an acceptable down payment. In reviewing the record, we conclude that "the judgment creditor" in the context of this case is not the Estates, nor Judge, because neither is a *foreclosure* judgment creditor. Thus, sec. 846.16(2) does not apply to Judge's use of assignments from the Estates.

Our "plain meaning" approach is buttressed by the notes of the Advisory Committee on Pleading, Practice and Procedure. This committee drafted Rule 278.16(2), Stats., the identical predecessor of sec. 846.16(2), Stats. *See* 225 Wis. vi (1938). These notes indicate that the drafting committee recognized the fact that in nearly all foreclosure cases the purchaser is the foreclosure judgment creditor. Thus, the procedure outlined in subsection (2) was intended to avoid cases of practical hardship to those creditors. There is no indication that the drafting committee intended to include assignments to purchasers who were not judgment creditors. We therefore affirm the trial court's order vacating Judge's use of the Estates' judgment satisfactions.

## VALIDITY OF THE IRS TAX LIENS

■■

To bolster their argument for higher priority, and thereby enhance their claim to any surplus funds, the Estates contend that the federal tax liens are invalid because the IRS did not bid its liens nor seek their foreclosure. The Estates argue that the IRS, by merely an- '

swering the complaint, asserted no rights to collect the taxes. We reject this argument.

First, the Estates cite no authority requiring the IRS to cross-complain, counterclaim or reduce its lien to a judgment in order to establish the validity of its tax lien. Nor has our independent research found any appropriate authority to support this proposition. The validity and priority of a federal tax lien is governed by federal law. The power of Congress to levy taxes is supreme and is not subject to state legislation concerning the recording or registration of mortgages or liens. U.S. Const. art. I, sec. 8 and art. VI; *see United States v. Snyder,* 149 U.S. 210, 213–14 (1893). The federal income tax liens asserted here were perfected in 1979 under the authority of I.R.C. § 6321. As the United States Supreme Court explained, "[t]he priority of the federal tax lien provided by [I.R.C.] § 6321 as against liens created under state law is governed by the common-law rule—'the first in time is the first in right.' " *United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 87 (1963). Contrary to the normal procedure in an action at law, these tax liens have the force of a judgment. *Bull v. United States,* 295 U.S. 247, 260 (1935). They arise when the assessed tax is not paid when due. *Id.*

The Estates argue that *Bull* supports its position that the government must initiate legal proceedings to enforce and collect any taxes allegedly due. We read *Bull* differently. In *Bull,* an executor filed a claim in the United States Court of Claims to offset income tax owed by the amount of estate tax paid. The Supreme Court, applying the liberal provisions of pleading and practice utilized in the Court of Claims, allowed the estate a credit against the deficiency in income tax. In

reviewing the broad scope of tax enforcement and the nature of a sovereign's rights to recover a just debt, the Court declared:

> [T]he usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment.

*Id.* We are aware of no authority that has modified or reversed this declaration.

■

The Estates next claim that 28 U.S.C. § 2410(c) requires the IRS to foreclose a tax lien. We disagree because this provision is couched in permissive terms:

> In any case where the debt owing the United States is due, the United States *may* ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States *may* bid at the sale . . . . [Emphasis added.]

The United States, under I.R.C. § 7403, is authorized to enforce its own tax liens, but the authorizing language is similarly permissive. Finally, I.R.C. § 7424 provides that "the United States *may* intervene in [a civil] action or suit to assert any lien." (Emphasis added.) Because these sections "are purely permissive in tenor," *United States v. Brosnan,* 363 U.S. 237, 246 (1960), we reject the Estates' argument that these provisions require certain actions on the part of the IRS.

Finally, the Estates argue that the IRS tax liens are invalid because they were extinguished by operation of law. The Estates argue that, contrary to I.R.C. § 6502, the IRS did not foreclose or levy upon its lien within six years. Under I.R.C. § 6321, if any person does not pay a required tax after demand, the amount due shall be a lien in favor of the United States upon all property belonging to that person. According to I.R.C. § 6323(a), this lien shall not be valid against any judgment lien creditor until notice has been filed pursuant to I.R.C. § 6323(f). I.R.C. § 6323(g) requires refilling every six years to retain priority. Here, the federal tax liens were refiled on December 14, 1984, well within the statutory requirement. Thus, the Estate's assertion of invalidity fails.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.