DANIEL A. and Timothy A., By Their Guardian Ad Litem, Stuart J. Krueger, Plaintiffs-Respondents-Cross Appellants-Petitioners,†

STEVEN A. and Meredith A., Plaintiffs-Respondents-Cross Appellants,

v.

WALTER H. and Creative Community Living Services, Inc., Defendants,

LA CROSSE COUNTY, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 92–1676. Submitted on briefs July 14, 1994.—Decided July 20, 1995.*

(Also reported in 537 N.W.2d 103.)

†Petition to review denied.

For the defendant-appellant-cross respondent, La Crosse County, the cause was submitted on the briefs of *Bradley D. Armstrong* and *Mark D. Hazelbaker* of *Axley Brynelson* of Madison.

For the plaintiff-respondent-cross appellants-petitioners, Daniel A. and Timothy A., the cause was submitted on the briefs of *Stuart J. Krueger* of *Bye, Krueger & Goff, S.C.* of River Falls.

For the plaintiff-respondent-cross appellant, Steven A. and Meredith A., the cause was submitted on the briefs of *Katherine E. Campbell* of *LaRowe & Gerlach, S.C.* of Reedsburg.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Defendant La Crosse County appeals from that part of an order compelling its employees to answer questions at deposition regarding five areas of inquiry.[1] The County contends that the trial court erred because the information sought is a confidential treatment record under § 51.30(4), STATS., and cannot be released without the consent of the subject individual. We hold that the court erred regarding those areas. The plaintiffs cross-appeal from that part of the same order prohibiting them from deposing the County on four other areas of inquiry, and we agree in part with the plaintiffs. We affirm the order in part and reverse in part.

## A. Background

Daniel and Timothy A., by their guardian ad litem, and their parents, Steven and Meredith A.,[2] brought this action for personal injury to Daniel and Timothy, both minor children, against the County, Creative Community Living Services, Inc. (CCLS), named

---

[1] We granted leave to the parties to appeal from the discovery order.

[2] We have deleted the parents' surname in order to protect the identity of Daniel and Timothy.

employees of the County and CCLS, and Walter H. The amended complaint alleges that Walter H. is a developmentally disabled adult who was under the care and custody of the County pursuant to a protective placement order[3] when the County and CCLS placed him in the plaintiffs' home as a foster placement, knowing that he had a history of sexual deviancy and violent behavior. While living at the plaintiffs' home, Walter allegedly sexually assaulted Daniel and Timothy.

The plaintiffs predicate their claims on 42 U.S.C. § 1983 and state law. They allege that the County and its employees deprived Daniel and Timothy of a liberty interest under the Fourteenth Amendment to the United States Constitution, negligently placed Walter in their home and failed to obtain treatment for his sexual deviancy and aggressive behavior after placement. They allege that Walter intentionally assaulted the boys.

---

[3] In the County's answer to the amended complaint, it states it is "without knowledge or information sufficient to form a belief as to the truth of the allegations . . . ." On appeal, it states that for briefing purposes it has "assume[d] the truth of plaintiffs' allegations that Walter H. is developmentally disabled and is in the care of La Crosse County." It adds:

> This is not to be construed as an admission that Walter H. is a client of La Crosse County. La Crosse County cannot admit whether or not a person is a client of the County's developmental disabilities services program. La Crosse County has consistently argued that the confidentiality statute forbids the County from releasing information in its treatment records, even if that information has become a matter of public record, unless the subject of the records gives informed consent or one of the exceptions to confidentiality applies.

In order to decide the issues in this appeal, we assume that Walter is a developmentally disabled client of the County.

The County counterclaims against the boys' parents on grounds that after the parents contracted with CCLS to provide care and supervision of Walter, they neglected to properly supervise him, their failure was a substantial factor in causing the boys' damages, and the County, as a third-party beneficiary of the contract, is entitled to contribution or indemnification from the parents.

The plaintiffs asked the County to produce all its records relating to Walter for their inspection. Walter has not consented to disclosure. The County refused on grounds that the information sought was confidential and privileged under the Mental Health Act, ch. 51, STATS., § 905.04, STATS., and WIS. ADM. CODE § HSS 92.03. The plaintiffs moved to compel production. The trial court denied the motion without prejudice. The plaintiffs then moved to compel discovery by oral deposition of county employees concerning the County's knowledge of Walter prior to and during his placement with the plaintiffs, and proposed nine areas of inquiry. The County opposed the motion on grounds of confidentiality and privilege under ch. 51.

The trial court prohibited discovery in four areas concluding that inquiry "would be contrary to the rules and the statutes which protect [Walter's] confidentiality." The prohibited areas are: (1) knowledge county employees had of reports of concern or expression from Walter or any other person regarding Walter's sexual needs or desires, (2) incidents of Walter's "sexuality" of which county employees were aware before he was placed in the plaintiffs' home, (3) recommendations for counseling Walter concerning sexuality made by or to the County before or while Walter was placed in the plaintiffs' home, and (4) if recommendations were

made, the counseling provided to Walter concerning his sexuality.

The court granted discovery in the remaining five areas, reasoning that they "don't involve . . . information that is inherently confidential," and "would be within the knowledge of . . . the La Crosse County employees outside of the records." The five areas are: (1) whether the County or CCLS directed Walter's placement in the plaintiffs' home, (2) which county employees were involved in Walter's supervision, (3) knowledge county employees had concerning criminal charges or allegations against Walter before he was placed in the home, (4) knowledge county employees had concerning investigative reports relating to alleged criminal activity by Walter before he was so placed, and (5) the substance of conversations or documents transmitted by county or CCLS personnel to members of the plaintiffs' family relating to the appropriateness of placing Walter in the plaintiffs' home.

## B. The Parties' Positions

The plaintiffs assert that county employees may be deposed on their knowledge pertaining to Walter in all of the proposed areas of inquiry, Walter's privilege has been waived and the County's records regarding Walter are not confidential. Daniel and Timothy contend that their parents, as sponsors of a resident in an adult family home,[4] provided services to Walter under a purchase-of-services contract and therefore the plaintiffs are entitled to receive confidential information

---

[4] "Adult family homes" include private residences, licensed as foster homes for the care of developmentally disabled adults in which a "care provider" provides care and maintenance, other than nursing care, to developmentally disabled adults. See § 50.01, Stats.

about Walter without his consent, citing § 46.23(3)(e), STATS. They also contend that § 48.981, STATS., pertaining to mandatory reporting of child abuse, entitles them to depose county employees regarding records relating to their alleged abuser, Walter. Finally, Daniel and Timothy argue that privilege and confidentiality must, in this instance, yield to concern for personal and public safety, and their parents argue that public policy requires disclosure of the County's records to imbue the County with incentive to act responsibly in placing persons in need of foster care with foster parents.

The County contends that (1) because the Mental Health Act makes Walter's treatment records privileged, even if a public record contains corroborating information, the court erred by compelling the County to release information from Walter's records by means of employee deposition, (2) no waiver of the privilege has occurred, (3) the court's order, to the extent it allows deposition, violates the public policy favoring confidentiality of services to patients, (4) the rules of the department of health and social services regarding adult family homes do not authorize discovery of treatment records, and (5) none of the records or information sought are related to child abuse investigations.

### C. Mental Health Act and Administrative Rules

██ The Mental Health Act, ch. 51, STATS., as implemented by the department of health and social services, severely restricts release of information from records maintained by the department, counties and treatment facilities regarding individuals who are receiving or have received services for mental illness,

developmental disabilities, alcoholism or drug dependency, unless the individual consents to disclosure.

Section 51.30(4), STATS., provides in part:

> (a) Except as otherwise provided in this chapter and ss. 905.03 and 905.04,[5] all treatment records shall remain confidential and are privileged to the subject individual. Such records may be released only to the persons designated in this chapter or ss. 905.03 and 905.04, or to other designated persons with the informed written consent of the subject individual as provided in this section . . . .
>
> (b) Notwithstanding par. (a), treatment records of an individual may be released without informed written consent in the following circumstances, . . . [describing more than twenty circumstances].

(Footnote added.)

Section 51.30(1)(b), STATS., provides in part:

> "Treatment records" include the registration and all other records concerning individuals who are receiving or who at any time have received services for mental illness, developmental disabilities, alcoholism, or drug dependence which are maintained by the department, by county departments under s. 51.42 or 51.437 and their staffs, and by treatment facilities.

Section 51.30(1)(a), STATS., defines "registration records" to include "all the records of the department, county departments under s. 51.42 or 51.437, treatment facilities, and other persons providing services to the department, county departments or facilities which identify individuals who are receiving or who at any

---

[5] Section 905.03 , STATS., is the lawyer-client privilege. It is irrelevant to this appeal. Section 905.04, STATS., is the physician-patient privilege.

time have received services for mental illness, developmental disabilities, [etc.] . . . ." Section 51.01(17), STATS., defines "treatment" as "psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabilitation of a mentally ill . . . or developmentally disabled person."

Section 51.30(2), STATS., provides in part: "An informed consent for disclosure of information from . . . treatment records . . . must be in writing . . . ."

Section 51.30(12), STATS., directs the department of health and social services to promulgate rules to implement § 51.30. The department has done so in WIS. ADM. CODE § HSS 92, entitled "Confidentiality of Treatment Records."

WISCONSIN ADM. CODE § HSS 92.03(1) provides in part:

> (a) All treatment records or spoken information which in any way identifies a patient are considered confidential and privileged to the subject individual.
>
> . . . .
> (f) No personally identifiable information contained in treatment records may be released in any manner, including oral disclosure, except as authorized under s. 51.30, Stats., this chapter or as otherwise provided by law.
>
> . . . .
> (h) No personally identifiable information in treatment records may be re-released by a recipient of the treatment record unless re-release is specifically authorized by informed consent of the subject individual, by this chapter or as otherwise required by law.

### D. Areas Proposed for Deposition

Section 804.01(2)(a), STATS., permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ., including . . . the identity and location of persons having knowledge of any discoverable matter."

■

Whether the treatment-records privilege attaches to the matters sought to be discovered in the nine areas proposed for deposition requires application of § 51.30(4), STATS., and related statutes. The application of a statute to undisputed facts is a matter of law which we decide without deference to the trial court's opinion. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758-59, 300 N.W.2d 63, 68 (1981). To apply the statute we first determine its meaning. That, too, is a question of law for us to decide. If the meaning is plain, we do not resort to the rules of statutory construction. *State Historical Soc'y v. Village of Maple Bluff*, 112 Wis. 2d 246, 252-53, 332 N.W.2d 792, 795 (1983).

The County argues that the trial court has compelled the County's employees to disclose information contained in their memories regarding the contents of the treatment records, without the consent of the subject individual. We agree that to disclose a person's memory regarding the contents of treatment records is tantamount to disclosing the records themselves, which is prohibited by § 51.30(4)(a), STATS. But that is not what the trial court required. It decided whether to allow the deposition on the basis of an employee's knowledge "outside" the treatment records.

The County contends, however, that the existence of information "outside" the treatment records which corroborates information in a treatment record does not eliminate the confidentiality requirement in

§ 51.30(4)(a), STATS.[6] The County asserts that the fact that someone else knows information which is also contained in treatment records does not "waive the privilege as to that information." The County twists the treatment-records privilege.

Neither the County nor any person other than the subject individual may waive the treatment-records privilege. The subject individual possesses the privilege. Only he or she can consent to the release of a treatment record.[7] Section 51.30(4)(b), STATS., provides for limited access to treatment records without the subject individual's consent, but those exceptions do not involve waiver.

Information which is or may be in a treatment record is not necessarily taboo. If it is obtained from a source other than a treatment record and other than from a person who obtained it from such a record, it is not subject to the treatment-records privilege. The holder of the privilege may give his or her "consent for disclosure of information from . . . treatment records . . . ." Section 51.30(2), STATS.[8] The holder need not consent to release of information from other sources.

[6] We need not discuss the trial court's alternative or companion test—whether information is "inherently confidential." No party advocates the test, and it has no statutory basis.

[7] Certain others, notably a parent or guardian of a minor or the guardian of an adult adjudged incompetent under ch. 880, STATS., may also consent. Section 51.30(5)(a), STATS.

[8] The holder's parent or guardian may consent to "release of confidential information in court or treatment records." Section 51.30(5)(a), STATS. It is not the preposition "from" or "in" that determines whether information is confidential. It is the source of the information. (The referenced "court records" are "files and

The meaning of the statute is plain. The treatment-records privilege in § 51.30(4) does not pertain to information which has been or may also be obtained from sources outside a treatment record.

The County's interpretation of the treatment-records privilege is unworkable. It would render taboo all information about persons who may be or may have been the County's patients. In theory, only persons having authorized access to a treatment record will know what is in it and whether a particular person is the subject individual. If the County's position is correct, nobody could know whether they can disclose information about a person who might be described in a treatment record, even if the information was acquired from sources other than the treatment record, such as criminal records, newspapers or personal observation.

The County cites *Casson v. Schoenfeld,* 166 Wis. 401, 166 N.W. 23 (1918), for the proposition that the existence of a public record containing privileged information does not "waive a statutory privilege." *Casson* is not on point. In *Casson,* the pertinent statute provided, "No person duly authorized to practice physic or surgery shall be permitted to disclose any information which he may have acquired in attending any patient in a professional character . . . ." *Id.* at 410, 166 N.W. at 26. The question was whether the physician at a state mental hospital could testify to the results of his examination of a person at the time of the person's commitment. The *Casson* court held that the physician who "learn[ed] in that capacity information concerning a patient committed to his care," was prohibited by that statute from disclosing the information, without the consent of the patient, and, further, "[t]hat a public

records of the court proceedings under . . . chapter [51]." Section 51.30(3)(a).)

record is required to be kept by such physician or institution does not affect the rule." *Id.* at 412-13, 166 N.W. at 26-27. The statutory privilege in *Casson* had to do with *who* had acquired information—the attending physician—not the *source* of the information. The treatment-records privilege applies to release of the records themselves, and to release of information from the records regardless who has acquired the information.

Our conclusion regarding the nonprivileged nature of information obtained from a source other than a treatment record is qualified in one important respect. WISCONSIN ADM. CODE § HSS 92.03(1)(a) makes the privilege applicable to all "treatment records or spoken information which in any way identifies a patient."[9] The rule must mean that the privilege applies to spoken information which in any way identifies a person as a patient. A person's social security number, for example, obtained from a source other than a treatment record identifies a person but it usually does not identify the person as a patient.

The rationale for WIS. ADM. CODE § HSS 92.03(1)(a) is undoubtedly the definition of "treatment records." The definition in § 51.30(1)(b), STATS., includes "registration records" concerning individuals who are receiving or who at any time have received services of the type described in the definition. As we said earlier, "registration records" include all records "which identify individuals who are receiving or who at any time have received services for mental illness, developmental disabilities, [etc.]." Section 51.30(1)(a). Since every patient is presumably identified in a record showing

<hr>

[9] The validity of WIS. ADM. CODE § HSS 92.03(1)(a) is not questioned in this appeal.

that he or she has received such services, information which identifies a person as a patient is subject to the privilege.

█ The trial court prohibited county employees from deposing as to their knowledge of reports of concern or expression from Walter or any other person regarding Walter's sexual needs or desires. The propriety of the ruling depends on the source of the employee's knowledge. If Walter disclosed his concerns to the employee regarding his sexual needs or desires, the knowledge is obtained from a source other than the treatment records. The source is Walter. The deposition may be prohibited by another privilege, such as the physician-patient privilege, § 905.04, STATS.,[10] but we deal here with the treatment-records privilege. If the source of an employee's knowledge is a treatment record, then the information is privileged. If an employee's source is reports by any other person regarding Walter's sexual needs or desires, the information is not privileged unless the employee obtained it from the treatment record or the person who reported those concerns or expressions obtained the information from the treatment record or the information identifies Walter as a

---

[10] Section 905.04(2), STATS., provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

patient. See WIS. ADM. CODE § HSS 92.03(1)(h) (re-release of personally identifiable information in treatment records is prohibited).

The trial court prohibited the plaintiffs from deposing county employees as to incidents of Walter's "sexuality" of which the employees were aware before he was placed in the plaintiffs' home. Whether knowledge of incidents of Walter's "sexuality" is within the treatment-records privilege depends on the source of a county employee's knowledge. If it was from a source outside the treatment records, it would not be privileged. But the proposed area for deposition relates to incidents occurring before Walter was placed in the plaintiffs' home. Relating those incidents to that time would identify him as a patient, and the inquiry is prohibited. WIS. ADM. CODE § HSS 92.03(1)(a).

The third and fourth areas of inquiry prohibited by the trial court, recommendations for counseling Walter concerning sexuality made by or to the County before or while Walter was placed in the plaintiffs' home, and the counseling itself, are subject to the same analysis. An employee could not testify to such recommendations or counseling without identifying Walter as a patient. WIS. ADM. CODE § HSS 92.03(1)(a). Both areas are privileged.

The first area the trial court held was not within the treatment-records privilege is whether the County or CCLS directed Walter's placement in the plaintiffs' home. Deposition of county employees regarding placement would identify Walter as a patient. The treatment-records privilege applies. WIS. ADM. CODE § HSS 92.03(1)(a). The same is true of the second area:

identifying the employees involved in Walter's supervision would identify him as a patient. The privilege attaches to that area. The third area, disclosing knowledge county employees had regarding criminal charges or allegations against Walter before he was placed in the plaintiffs' home would disclose that he was a patient. Disclosure would violate the treatment-records privilege. Knowledge county employees have unrelated to Walter's date of placement concerning criminal charges or allegations obtained from sources other than the treatment records, or from persons who did not obtain the information from the treatment records, is not privileged. The fourth area, knowledge county employees have of investigative reports about alleged criminal activity by Walter prior to his placement in the plaintiffs' home is prohibited. Relating such reports to that time would identify Walter as a patient. WIS. ADM. CODE § HSS 92.03(1)(a). The fifth area, the substance of conversations or documents the County or CCLS personnel transmitted to members of the plaintiffs' family relating to placing him in the plaintiffs' home, is covered by the privilege. The conversations would identify Walter as a patient. Inquiry regarding an employee's knowledge of documents would search the employee's memory as to the contents of such documents. The inquiry therefore is covered by the treatment-records privilege. And of course, such conversations and documents would identify Walter as a patient, bringing them within the privilege.

### E. Exceptions to § 51.30(4), STATS., Privilege

We turn to whether any exception to the confidentiality provision in § 51.30(4), STATS., allows discovery of any of the areas which we have concluded are privileged, notwithstanding the absence of consent from

Walter or his guardian. We conclude that no exception allows the proposed discovery.

The introductory language in § 51.30(4)(a), STATS., itself refers to three exceptions: "Except as otherwise provided in this chapter and ss. 905.03 and 905.04 . . . ." Section 905.03, STATS., creates the lawyer-client privilege. Section 905.04, STATS., creates the physician-patient privilege. None of the several enumerated exceptions in §§ 905.03(4) and 905.04(4) applies.

Section 51.30(4)(b), STATS., lists over twenty "circumstances" in which treatment records may be released without the individual's consent, but no exception expressly applies in a tort action brought against a person entitled to the treatment-records privilege or against defendants in the position of the County.

The plaintiffs argue that § 51.30(4)(b)4, STATS., authorizes release of treatment records of a subject individual in a tort action without his or her consent "[p]ursuant to lawful order of a court of record." That phrase allows a court to release treatment records

> when the requested access is comparable to one of the statutory exceptions set forth in § 51.30(4)(b). A court may . . . grant access to treatment records under sec. 51.30(4) for a particular purpose that is similar to those enumerated, to those individuals who need access to achieve that particular purpose, and of those records needed to achieve that purpose. Under this exception to the § 51.30(4) mandate that treatment records remain confidential, the purpose must be consistent with the purposes for which access is currently allowed: treatment, administration, research, law enforcement/investigation, protection/advocacy and legal proceedings relating to the subject individual.

*In re Mental Condition of Billy Jo W.*, 182 Wis. 2d 616, 637-38, 514 N.W.2d 707, 713 (1994) (footnotes to specific subdivisions in § 51.30(4)(b) omitted).

The *Billy Jo* standard for release under the "lawful order of a court of record" exception does not assist the plaintiffs. No statutory exception in § 51.30(4)(b), STATS., is related to release of a person's treatment records in a tort action against the person or against individuals or agencies who provided him with treatment.

We conclude that none of the exceptions to confidentiality and the resulting privilege referred to in § 51.30(4), STATS., applies to discovery in any of the areas of proposed inquiry.

### F. Waiver

The plaintiffs' contention that Walter has waived his treatment-records privilege rests on §§ 905.04(2), (3) and (4)(c), STATS. The treatment-records-privilege statute itself, § 51.30(4), STATS., makes no explicit provision for waiver. However, as we said earlier, the first sentence of § 51.30(4)(a) reads: "Except as otherwise provided in this chapter and ss. 905.03 and 905.04, all treatment records shall remain confidential and are privileged to the subject individual."

The plaintiffs rely on one exception to the physician-patient privilege, § 905.04(4)(c), STATS., which provides in part:

> There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which the patient relies upon the

condition as an element of the patient's claim or defense . . . .

The patient, his or her guardian or conservator, or personal representative may assert the physician-patient privilege. Section 905.04(3). Walter's guardian asserted the privilege in respect to an earlier proposed deposition of Walter, on the basis that deposition would be bad for his emotional condition and he is not capable of understanding the meaning of an oath.

Daniel and Timothy contend that because Walter's privilege has not been asserted in regard to matters not directly involving his proposed deposition, and because his guardian has not answered the complaint and Walter's privilege was asserted only to avoid his deposition, Walter and his guardian have waived his privilege "in matters not pertaining to Walter's deposition."

That Walter's guardian has not answered the complaint is immaterial. A person possessing the treatment-records privilege in § 51.30(4)(a), STATS., need not assert it on pain of losing it. To compel its assertion would identify the person as one who was or is a patient contrary to WIS. ADM. CODE § HSS 92.03(1)(a). The statute flatly provides that "all treatment records shall remain confidential and are privileged to the subject individual," and may be released only "with the informed written consent of the subject individual . . . ." Section 51.30(4)(a). That consent has never been given.

Daniel and Timothy rely upon *State v. Johnson*, 133 Wis. 2d 207, 226, 395 N.W.2d 176, 185 (1986), for their waiver argument. At a postconviction motion hearing, Johnson submitted letters written prior to trial by doctors indicating their concerns regarding his competency to stand trial. Section 905.11, STATS., pro-

995

vides that a person possessing a privilege against disclosure waives the privilege by voluntarily disclosing or consenting to disclosure. The *Johnson* court said,

> Although we find sec. 905.11 dispositive because of the introduction of the letters, we note that the introduction of the *issue* of competency, by itself, may waive the privilege under sec. 905.04(4)(c). Because sec. 905.11 is dispositive, we do not address the question of whether sec. 905.04(4)(c) would prohibit Johnson from claiming the physician-[patient] privilege.

*Id.* at 226, 395 N.W.2d at 185. The statement that "the introduction of the *issue* of competency, by itself, may waive the privilege under § 905.04(4)(c)," is unexplained dictum. Unexplained dictum in a supreme court opinion does not bind us. *State v. Koput*, 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804, 811 (1988).

We conclude that Walter has not waived his privilege under the treatment-records statute by virtue of his guardian's having objected to the deposition of Walter.

We also reject the plaintiffs' contention that the County waived Walter's treatment-records privilege. Section 55.04(1)(a)8, STATS., provides that a county has a duty to provide legal counseling on behalf of a person who is protectively placed. The County brought a motion to prevent the plaintiffs from taking Walter's deposition.[11] The boys' parents assert that by advocating a legal position on Walter's behalf, the County put his mental status at issue and waived Walter's privi-

---

[11] We are not asked to decide how the County can bring such a motion without violating the treatment-records privilege.

lege under § 905.04(4)(c), STATS. They are wrong. The County cannot consent to disclosure. Only Walter or his guardian may consent to release. Section 51.30(2) and (5)(a), STATS.

G. Loss of Privilege Under § 46.23(3)(e), STATS., and DHSS Rules

Relying on § 46.23(3)(e), STATS., and various DHSS rules,[12] Daniel and Timothy contend that information in Walter's treatment records should be available to them for purposes of their lawsuit because their parents, as sponsors of a resident in an adult family home, provided services to Walter under a purchase-of-services contract. Section 46.23(3)(e) provides in part:

> Notwithstanding . . . [s.] 51.30 . . ., any subunit of a county department of human services acting under this section may exchange confidential information about a client, without the informed consent of the client, with any other subunit of the same county department of human services or with any person providing services to the client under a purchase of services contract with the county department of human services, if necessary to enable an employe or service provider to perform his or her duties, or to enable the county department of human services to coordinate the delivery of services to the client.

Section 46.23(3)(e), STATS., does not deprive Walter of his treatment-records privilege. Section 51.30(4)(a), STATS., provides in relevant part, "Except as otherwise provided *in this chapter and ss. 905.03 and 905.04*, all treatment records shall remain confidential and are

---

[12] Daniel and Timothy cite WIS. ADM. CODE §§ HSS 82.06(3) and (5)(a), 82.09(1), and 92.04(4)(a).

privileged to the subject individual." (Emphasis added.)

As we said above, § 46.23(3)(e), STATS., provides that "Notwithstanding . . . [s.] 51.30 . . ., any subunit of a county department of human services acting under this section may exchange *confidential* information about a client" with certain persons under certain circumstances. (Emphasis added.) Those persons must treat the information as confidential. Section 46.23(3)(e) refers to the information as "confidential." The act of passing confidential information among the members of this select, authorized group does not deprive the information of its confidential nature. Persons in this group are not free to disseminate the confidential information to the public. Thus, the actions allowed by § 46.23(3)(e) cannot deprive Walter of his privilege for purposes of deposition or trial.[13]

### H. Commitment Records

Daniel and Timothy next assert that any record in the possession of the County involving hearings on the extension of a sex offender's commitment to the department of health and social services is not privileged and the physician-patient privilege does not apply, citing *State v. Cramer*, 91 Wis. 2d 553, 565, 283 N.W.2d 625, 631 (Ct. App. 1979), *aff'd*, 98 Wis. 2d 416, 296 N.W.2d 921 (1980), *cert. denied*, 450 U.S. 924 (1981). They assert that if Walter has been involved in commitment proceedings under the Sex Crimes Law, ch. 975, STATS., statements he made in the course of treatment pursu-

---

[13] Similarly, the cited administrative rules cannot deprive Walter of his privilege.

ant to that Act are not privileged and are admissible, citing *State v. Hungerford*, 84 Wis. 2d 236, 242, 267 N.W.2d 258, 262 (1978).

Assuming Daniel and Timothy correctly state the law, the record does not disclose whether Walter was the subject of such commitments, and the areas they propose for deposition do not specifically relate to such commitments, if any occurred.

## I. Public Policy

Daniel and Timothy assert that privilege and confidentiality must yield to the need to protect them and the public. They rely on *Schuster v. Altenberg*, 144 Wis. 2d 223, 249, 424 N.W.2d 159, 170 (1988), where the court said, "The concern regarding the preservation of patient trust in the confidentiality of communications is legitimate, yet one which must yield in those limited circumstances where the public interest in safety from violent assault is threatened."

The *Schuster* court held that if it was "foreseeable to a psychiatrist, exercising due care, that by failing to warn a third person or by failing to take action to institute detention or commitment proceedings [with respect to his or her patient] someone would be harmed, negligence will be established." *Id.* at 240, 424 N.W.2d at 166. The court reached that conclusion, notwithstanding the physician-patient privilege in § 905.04(2), STATS. *Id.* at 251, 424 N.W.2d at 170-71.

The *Schuster* decision does not authorize the court of appeals to add exceptions to the treatment-records privilege in § 51.30, STATS. We cannot add exceptions to a statutory privilege under the aegis of public policy.

The parents contend that public policy requires disclosure of Walter's treatment records, because otherwise the County has little or no incentive to act responsibly when placing a person in need of foster care with foster parents. Again, if such a policy choice has merit, the choice is for the legislature, not us.

### J. Conclusion

The trial court's order granting and denying discovery must be affirmed in part and reversed in part. We remand for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part and reversed in part and cause remanded for further proceedings.