STATE of Wisconsin, Plaintiff-Respondent,

v.

Roger K. ALLEN, Defendant-Appellant.†

Court of Appeals

*No. 95–0792–CR. Submitted on briefs December 29, 1995.—Decided February 21, 1996.*

(Also reported in 546 N.W.2d 517.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *Barbara Oswald,* assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   Roger K. Allen appeals from judgments of conviction for public assistance fraud pursuant to § 49.12(1) and (6), STATS., and food stamp fraud pursuant to § 49.127(2m) and (8)(a)2, STATS. In both instances, Allen was convicted as a party to the crime. The convictions resulted from Allen's pleas of no contest to the charges following the trial court's denial of his motion to suppress evidence of his medical billing records obtained from a local hospital by investigators with the Racine County Sheriff's Department.

On appeal, Allen contends that his billing records were confidential and privileged under §§ 146.82(1) and 905.04(2), STATS., and could not be disclosed without his consent. We conclude that the billing records were properly disclosed under § 146.82(2)(a)3 and accordingly affirm the judgments of conviction.

## BACKGROUND

The facts of this case are undisputed. An employee in the patient financial services department at St. Luke's Hospital in Racine, Wisconsin, informed the Racine County Department of Human Services (DHS) that a man, later determined to be Allen, had been coming to the hospital for treatment using two different names. At that time, certain of Allen's hospital bills were being paid under the medical assistance provisions of Title 19. However, at that same time, Allen, under the name of "Roger Roz," was also receiving treatment paid by a worker's compensation carrier.

304

The DHS relayed this information to the Racine County Sheriff's Department. Investigators from the department's Special Investigative Unit were sent to St. Luke's ·to look into the matter. The investigators interviewed a St. Luke's patient services representative who provided the investigators with certain information from Allen's billing records. These records revealed that Allen had sought and received medical assistance for his hospital treatment under the name "Roger Allen." The investigators also learned that Allen, using the name "Roger Roz," was also receiving treatment paid by a worker's compensation carrier. The St. Luke's representative provided the investigators with the name of Allen's employer. The investigators did not receive any detailed medical treatment information. The St. Luke's representative provided this information to the investigators without Allen's knowledge or consent.

Based on this information, the investigators later contacted Allen's previous employer and insurers to obtain more detailed information regarding his employment history and learned that Allen had received a worker's compensation settlement award.

The investigators also obtained Allen's DHS records, revealing the public assistance benefits he and his family had sought and received. These records established that Allen and his wife, Mary, applied for public assistance on July 10, 1991, and each signed a notice of responsibility acknowledging that they were to report any changes in income and assets or any circumstances that could affect their eligibility for public assistance. On March 27 and September 11, 1992, the Allens filed review applications for public assistance which failed to report the receipt of a $17,197 worker's

compensation settlement issued to them in December 1991.

On March 23, 1993, the Allens filed a further application with DHS that still did not report the worker's compensation settlement. This application further represented that Mary had not worked since December 1992 and that Allen had not worked since the summer of 1992. In fact, Allen had been employed with a company under the name of "Roger Roz" from October 26, 1992, to December 14, 1992, and had received worker's compensation payments from the company's insurer beginning in December 1992. Those payments continued until July 1993. The Allens received various public and medical assistance benefits as a result of the information that was disclosed on the applications.

On March 1, 1994, the State charged Allen with one count of felony welfare fraud, in violation of § 49.12(6), STATS., and one count of food stamp fraud for failing to report a change in income, in violation of § 49.127(2m), STATS., both as a party to the crime under § 939.05, STATS.[2] Allen entered pleas of not guilty to the charges alleged in the information. He later filed a motion to suppress the materials directly or indirectly procured from St. Luke's by the investigators on the grounds that his billing records were confidential and privileged information.

On August 24, 1994, the trial court denied Allen's motion to suppress the evidence. Allen then changed his pleas to no contest. The trial court sentenced Allen to a three-year prison sentence on the food stamp fraud charge, consecutive to another sentence which Allen was already serving. The court also imposed a consecu-

---

[2] Both Allen and his wife were charged; however, the trial court granted a motion to sever their trials.

tive but stayed seven-year sentence with ten years' probation on the public assistance fraud charge. Allen appeals.

## DISCUSSION

Allen argues that the information disclosed by the St. Luke's representative to the sheriff's department investigators was privileged under the confidentiality provisions of §§ 146.82 and 905.04(2), STATS., and therefore was inadmissible as evidence against him.

The State first responds that § 46.25(2m), STATS., allowed DHS to request the information from St. Luke's. This statute provides:

> The department [of health and social services] may request from any person any information it determines appropriate and necessary for the administration of this section, ss. 49.19, 49.46, 49.468 and 49.47 and programs carrying out the purposes of 7 USC 2011 to 2029.

We agree with the State that this statute clearly authorizes DHS to seek information necessary to the administration of the public assistance program. From this, we think it logically follows (although the statute is not as explicit) that the person or agency to whom the request is directed is also authorized to release it. Since the information sought by DHS from St. Luke's in this case related to DHS administration of the public assistance program, we conclude that the request and the disclosure were proper.[3]

---

[3] We stress that § 46.25(2m), STATS., does not give DHS carte blanche authority to request all medical records of an applicant. Rather, the requested records must relate to the

However, § 46.25(2m), STATS., does not address the different and higher question posed in this case—whether the information obtained under that statute may be admitted as evidence over an objection premised on privilege in a criminal proceeding. In fact, the statute says nothing about confidentiality or privilege. Thus, we must look elsewhere for the answer to this question. We conclude that the answer lies in an analysis of two other statutes: § 146.82, STATS., governing confidentiality of patient health care records and § 905.04(2), STATS., governing privileged communications between a patient and a health care provider.

■■■■

The construction of a statute and its application to a set of facts presents a question of law for our independent review. *See  City of Muskego v. Godec,* 167 Wis. 2d 536, 545, 482 N.W.2d 79, 83 (1992). A general rule of statutory construction is that a specific statute takes precedence over a general statute. *See id.* at 546, 482 N.W.2d at 83.

Section 146.82(1), STATS., covers patient health care records and, subject to certain exceptions, deems such records "confidential."[4] Section 905.04(2), STATS., covers communications between a patient and a health care provider and, subject to certain exceptions, accords the patient a privilege to refuse to disclose such

"appropriate and necessary" administration of the relevant statutes.

[4] Section 146.82(1), STATS., provides:

**Confidentiality of patient health care records.** (1) CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient. This subsection does not prohibit reports made in compliance with s. 146.995 or testimony authorized under s. 905.04(4)(h).

"confidential communications."[5] In many instances, the data covered by these two statutes will overlap because a patient's health care record under § 146.82 may often include a record of a confidential communication between the patient and a health care provider under § 905.04. Therefore, although §§ 146.82 and 905.04 are recited in different chapters of the statutes, they both address the confidential or privileged status of health care information and communications.

■■■■ When multiple statutes address the same subject matter, we properly read the two statutes in pari materia such that both will be operative. *See Schinner v. Schinner*, 143 Wis. 2d 81, 91, 420 N.W.2d 381, 385 (Ct. App. 1988). If the potential for conflict between the statutes is present, we will read the statutes to avoid such conflict if a reasonable construction so permits. *Wyss v. Albee*, 193 Wis. 2d 101, 110, 532 N.W.2d 444, 447 (1995).

Section 905.04(4), STATS., recites the exceptions to the privilege which otherwise pertain to communications between a patient and a health care provider. These exceptions do not include the release of information for billing, collection or payment of claims purposes.

However, § 146.82(2), STATS., does provide such an exception.

---

[5] Section 905.04(2), STATS., provides in part:

GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition . . . .

■

(2) ACCESS WITHOUT INFORMED CONSENT. (a) Notwithstanding sub. (1), patient health care records shall be released upon request without informed consent in the following circumstances:

. . . .

3. To the extent that the records are needed for billing, collection or payment of claims.

■

Here, the testimony at the suppression hearing established that St. Luke's billings for Allen's medical services were paid by Title 19 medical assistance while, at the same time, its billings for other of Allen's medical services were paid by worker's compensation under Allen's fictitious name, "Roz." Since Allen had successfully obtained payment of his bills by medical assistance, we conclude that DHS was authorized by this statutory exception to request St. Luke's records when the propriety of the payments was called into question by the information initially received from St. Luke's.[6] Pursuant to this statutory exception, St. Luke's was not required to first obtain Allen's consent before it could release the billing information.

■

In summary, even though the release of Allen's patient care billing records was not authorized by any exception in § 905.04(4), STATS., it was specifically authorized by the exception in § 146.82(2)(a)3, STATS. Reading the two statutes in pari materia, they represent a collective statement as to the reach and limits of the confidentiality and privilege which attach to such records or communications. Reading the stat-

---

[6] We do not read Allen's appellate brief to challenge the initial telephone contact of DHS by St. Luke's. Rather, his challenge is to the information disclosed by St. Luke's to the investigators who responded to the telephone contact.

utes in this fashion, we uphold both and do violence to neither. In making this holding, we bear in mind that the privilege set out in § 905.04 is purely statutory. *See Steinberg v. Jensen,* 194 Wis. 2d 440, 459, 534 N.W.2d 361, 368 (1995). Evidentiary privileges interfere with the trial court's search for the truth and must be strictly construed. *State v. Locke,* 177 Wis. 2d 590, 602, 502 N.W.2d 891, 896 (Ct. App. 1993).

We see *Godec* to be in accord with our analysis, although the supreme court's opinion there did not analyze the two statutes to the degree we have here. Godec argued on privilege grounds that an alcohol content blood test, obtained for diagnostic purposes, could not be used against him in a drunk driving prosecution. *Godec,* 167 Wis. 2d at 539, 482 N.W.2d at 80. Godec relied on the patient care records provisions of § 146.82, STATS., which contains no exception for intoxication tests. However, the supreme court approved the use of the evidence, citing § 905.04(4)(f), STATS., which recognizes a specific exception for intoxication tests. While here we have concluded that § 146.82, not § 905.04, is the applicable statute, we, like the supreme court in *Godec,* properly consider the possible effect of both statutes on the question.

We conclude that St. Luke's properly disclosed its "billing, collection or payment of claims" records pursuant to § 146.82(2)(a)3, STATS. Therefore, the trial court properly denied Allen's motion to suppress the records pursuant to this statute.[7]

---

[7] Because we have concluded that Allen's hospital billing records were properly disclosed under the provisions of § 146.82 (2)(a)3, STATS., we do not address the State's further arguments that: (1) pursuant to WIS. ADM. CODE § HSS 104.01(3), medical assistance recipients waive the physician-patient privilege; and

*By the Court.*—Judgments affirmed.

(2) Allen did not reasonably expect that the billing information would be confidential under § 905.04, STATS.