Sylvia M. CRAWFORD, by June E. Goodyear, her guardian, Plaintiff-Respondent,

v.

CARE CONCEPTS, INC., d/b/a Premier Care and St. Paul Fire & Marine Insurance Company, Defendants-Appellants,†

Donna SHALALA, Secretary of the United States Department of Health & Human Services, Defendant.

Court of Appeals

*No. 99–0863. Submitted on briefs October 8, 1999.—Decided February 10, 2000.*

2000 WI App 59

(Also reported in 608 N.W.2d 694.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael J. Hogan* and *Nancy E. LeMarbre* of *Hogan, Ritter, Minix & Pasholk* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Philip R. Schomber* of *O'Neal, Forbeck, Elliott & Monahan, S.C.* of Beloit.

Before Eich, Vergeront and Roggensack, JJ.

¶ 1.   EICH, J.   Sylvia Crawford, a patient at one of Care Concepts' nursing homes, sued Care Concepts and its insurer, claiming she was injured when physically attacked by another patient. Crawford submitted interrogatories to Care Concepts asking, among other things, whether the attacker had, in the past, engaged in (a) conduct directed against other patients or staff which was likely to cause "physical pain or injury," or (b) conduct having "a tendency to cause a disturbance." In each instance, Care Concepts was asked to describe any such incidents and indicate whether they were memorialized in reports or records. Care Concepts

refused to answer, claiming that disclosure of the requested information is prohibited by the physician-patient privilege stated in WIS. STAT. § 905.04.[1] The circuit court disagreed and granted Crawford's motion to compel.[2]

¶ 2.   We conclude that, as a matter of law, the information sought by the first set of interrogatories is not subject to the statutory privilege, and we affirm the circuit court's order in that regard. We also conclude that the other set of interrogatories might possibly reach privileged information—but that that determination cannot be made without having Care Concepts' actual answers before us. We therefore reverse the circuit court's order with respect to the latter set of interrogatories, remanding the case with directions to order their *in camera* submission so that the court may take such action on Care Concepts' motion as it may consider appropriate in light of this decision.

¶ 3.   The facts are not in dispute. Crawford was attacked and seriously injured by D.D., another patient residing at the home. In her lawsuit, Crawford claimed the Care Concepts staff was negligent for "allowing . . . [D.D.], knowing that she was violent and [had] attacked other persons, to be in a position where she could attack . . . Crawford." Among the interrogatories Crawford served on Care Concepts were the following:

> INTERROGATORY NO. 4: State whether or not [D.D.] ever engaged in conduct towards an employee, of defendant, Care Concepts, Inc., a resident of defendant, Care Concepts Inc., or any other person which caused or reasonably could have been

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] We granted Care Concepts' petition for leave to appeal from the court's interlocutory order.

expected to cause physical pain or injury, illness, or other physical impairment.

INTERROGATORY NO. 5: If the answer to Interrogatory No. 4 is in the affirmative, for each such incident please provide the following information:

    A.    The date such incident occurred.

    B.    The name and current address of any person against whom such action was taken.

    C.    State whether or not any record or reports of the incidents were prepared by defendant, Care Concepts, Inc., or on its behalf.

    D.    Describe in detail the nature of the incident.

INTERROGATORY NO. 6: State whether or not, in addition to any incident described in the answers to Interrogatories Nos. 4 and 5, [D.D.] ever engaged in any conduct the nature of which has a tendency to cause a disturbance.

INTERROGATORY NO. 7: If the answer to Interrogatory No. 6 is in the affirmative, for each such incident please provide the following information:

    A.    The date such incident occurred.

    B.    State whether or not any record or reports of the incidents were prepared by defendant, Care Concepts, Inc., or on its behalf.

    C.    Describe in detail the nature of the incident.

¶ 4.    Care Concepts asks that we reverse the circuit court's order in its entirety on grounds that WIS. STAT. § 905.04(2) prevents Care Concepts from disclosing any and all information requested in the

613

interrogatories. The application of a statute to conceded facts is a question of law which we review de novo. *Steinberg v. Jensen*, 194 Wis. 2d 439, 458, 534 N.W.2d 361 (1995).

¶ 5. WISCONSIN STAT. § 905.04(2) provides:

> (2) GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition*, among the patient, the nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or person, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor (emphasis added).

"Confidential" is defined as follows in WIS. STAT. § 905.04(1)(b):

> A communication or information is 'confidential' if [it is] not intended to be disclosed to 3rd persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication or information or persons who are participating in the diagnosis and treatment under the direction of the physician, registered nurse . . . psychologist, social worker . . . or professional counselor . . . .

¶ 6. Care Concepts argues that because Wisconsin law requires nursing home personnel to document

614

each resident's mental and physical condition,[3] D.D.'s health care records must necessarily contain confidential information regarding her care and treatment—including "observations of her behavior and how she is responding to treatment." "These observations," it argues—observations which must necessarily include observations of her assaultive and/or disruptive behavior toward Crawford and others—"are as much a part of her confidential health care record as any communications she made during the course of her stay at the nursing home," and are therefore protected by the statutory privilege.

■

¶ 7.  Looking to the language of the statute, we observe first that, reasonably construed, the word "confidential" must be considered as modifying both "communications made" and "information obtained or disseminated." As may be seen above, the statute defining the term "confidential," WIS. STAT. § 905.04(1)(b), uses "communications" and "information" interchangeably. We are thus satisfied that, by its plain terms, § 905.04(2) applies to confidential communications made by a patient to a health-care provider (or confidential information relating to the patient which is obtained by or disseminated to a health-care provider) under circumstances where the communication (or information): (1) is made (or disseminated) for the purpose of diagnosing or treating the patient's physical or mental condition; and (2) the patient

---

[3] Care Concepts refers us to WIS. ADMIN. CODE § HFS 132.45 (5)(c)(3), which requires "a narrative nursing note" to document each resident's condition. For residents requiring skilled care, these notes are required "as needed . . . but at least weekly," whereas for residents not requiring skilled care, the notes are required "as often as needed . . . but at least every other week."

■

intends that the communication (or information) not be disclosed to anyone other than participating health-care providers for any purpose other than "to further the patient's interest in the consultation, examination or interview at which the communication is made or the information obtained or disseminated."

¶ 8. The "physical harm" interrogatories—Interrogatories Nos. 4 and 5—seek information, including records or reports, regarding incidents in which D.D. engaged in conduct directed toward a particular person which either caused, or reasonably could have been expected to cause, "physical pain or injury . . . or . . . impairment." The conduct sought to be discovered is, in essence, assaultive conduct. *See Meyer v. Briggs*, 18 Wis. 2d 628, 630, 119 N.W.2d 354 (1963) (assault is an unlawful attempt, coupled with apparent and real present ability, to do bodily harm to another). And we fail to see what a nursing home resident's assaultive conduct—whether undertaken intentionally or impulsively and whether occurring in a residential or care-giving setting within the home—has to do with confidential information obtained by, or disseminated to, health-care providers for purposes of diagnosis or treatment.

¶ 9. We have also held that "the proper gauge of the scope of the § 905.04(2) privilege" is "[t]he patient's objectively reasonable perceptions and expectations," *State v. Locke*, 177 Wis. 2d 590, 604, 502 N.W.2d 891 (Ct. App. 1993), and we similarly fail to see how a nursing home resident could have a reasonable expectation of privacy in such assaultive conduct—again, regardless of whether it is intentional or impulsive and regardless of where it occurs within the home. Finally, the privilege exists to encourage patients to freely and

candidly discuss medical concerns with health-care providers by assuring them that those concerns will not be unnecessarily disclosed to third parties. *Steinberg*, 194 Wis. 2d at 459. Crawford is not requesting release of any records of D.D.'s health or medical care—the interrogatories seek only to discover non-medical information which may exist in records or reports maintained by the nursing home relating to prior incidents where D.D. was involved in conduct that actually caused—or had the potential to cause—physical harm or injury to others. We think the gap between the information sought by Interrogatories Nos. 4 and 5 and the statute's *raison d'être* is even wider than the gap between that information and the plain language of privilege embodied in WIS. STAT. § 904.05(2). We therefore conclude that the circuit court did not err in granting Crawford's motion to compel Care Concepts to answer those interrogatories.

¶ 10. We see the situation somewhat differently with respect to Interrogatories Nos. 6 and 7. They seek information, including records and reports, relating to any conduct engaged in by D.D. "the nature of which has a tendency to cause a disturbance." The language is quite general and not limited to the assaultive-type conduct inquired into by Interrogatories Nos. 4 and 5. It could conceivably reach matters that are arguably privileged—such as D.D.'s reactions or resistance to actual medical or psychiatric treatment, in the privacy of the treatment room, which might be said to cause a "disturbance" in that setting. And even though we believe the chance of these interrogatories reaching privileged information is indeed slim, it nonetheless exists and we do not think it should be ignored.

¶ 11. In the past, when facing disputed issues of privilege, we have recognized the value of *in camera*

proceedings as an appropriate means of resolving such disputes. *Dyson v. Hempe*, 140 Wis. 2d 792, 805–06, 413 N.W.2d 379 (Ct. App. 1987). Indeed, in another physician-patient case, we said that the *in camera* inspection of materials claimed to be privileged under WIS. STAT. § 905.04(2) is "the best tool" available for making such a determination, *see State v. Munoz*, 200 Wis. 2d 391, 399–400, 546 N.W.2d 570 (Ct. App. 1996); and we think that process is particularly applicable here.

¶ 12.　We therefore reverse the circuit court's order with respect to Interrogatories Nos. 6 and 7 and remand to allow the court to order *in camera* production of the requested materials so that it may determine, under the rules we have discussed above, whether any information so produced may be privileged under WIS. STAT. § 905.04(2).[4] In all other aspects, we affirm.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

¶ 13.　ROGGENSACK, J. *(dissenting)*. The majority concludes that the information requested in interrogatories 4 and 5, which relates to acts of D.D., is

---

[4] Care Concepts also argued to the circuit court (and to us) that WIS. STAT. § 146.82, which prohibits release of patient health care records to unauthorized persons without the patient's consent, bars Crawford's interrogatories. The statute also states, however, that such records may be released "under a lawful order of a court." WIS. STAT. § 146.82(2)(a)4. As a result, any privileged material would not be released under any circumstances, and any material that is non-privileged could be released by order of the court.

not the type of information protected by the privilege set forth within WIS. STAT. § 905.04, and therefore it affirms the order compelling discovery. I conclude that under WIS. STAT. § 146.82(1), records of the conduct of a patient who has dementia, a mental health problem, is as much a confidential health care record as is the recorded blood pressure of a hypertensive patient and that the court's order directing release of information collected about D.D. was not a "lawful order." I also conclude that the majority's proposed *in camera* release of information contained in D.D.'s health care records, to determine whether it should be provided in response to interrogatories 6 and 7, contravenes § 146.82(2). Therefore, I respectfully dissent.

**Release of Mental Health Information.**

¶ 14.   In order to answer the questions posed by this appeal, we must determine whether answering the interrogatories will involve disclosing information obtained from D.D.'s health care records, and/or disclosing the records themselves, and whether such disclosures are prohibited under Wisconsin law. At least two statutes bear upon these questions: WIS. STAT. §§ 146.82 and 905.04.

*1.   Standard of Review.*

¶ 15.   Determining whether the information requested by Crawford constitutes a patient health care record, protected under WIS. STAT. § 146.82, and whether it constitutes a confidential communication made for the purpose of diagnosis or treatment, protected by WIS. STAT. § 905.04, requires statutory interpretations, tasks this court proceeds upon without deference to the circuit court's decision. *See Franzen v.*

*Children's Hosp. of Wis., Inc.*, 169 Wis. 2d 366, 376, 485 N.W.2d 603, 606 (Ct. App. 1992). Determining whether the circuit court's order was "lawful" also requires us to engage in a *de novo* review of the statutes. *See State v. Allen*, 200 Wis. 2d 301, 308, 546 N.W.2d 517, 520 (Ct. App. 1996).

### 2. Health Care Record.

¶ 16.   Care Concepts contends that the information it collected, which is sought by Crawford, is within D.D.'s health care records and should not be provided because it is both a privileged communication, within the meaning of WIS. STAT. § 905.04(2), and a patient health care record, within the meaning of WIS. STAT. § 146.81(4), whose confidentiality is established by WIS. STAT. § 146.82(1) and whose access without informed consent is controlled by § 146.82(2).[1] The majority concludes that D.D.'s "assaultive conduct" cannot be confidential health care information obtained for purposes of treatment or diagnosis and thereafter concludes that it falls outside the scope of § 905.04(2)'s privilege. The majority opinion does not examine whether recordings of D.D.'s conduct are confidential patient health care records under § 146.82.

¶ 17.   At the time of the incident which gives rise to this lawsuit, D.D. was being cared for at Care Concepts, a nursing home, due to dementia. As part of the nursing home's responsibility, it was required to docu-

---

[1] The record does not reflect whether Crawford sought permission from D.D.'s guardian to receive the information she seeks.

ment D.D.'s activities. *See* WIS. ADMIN. CODE § HFS 132.45(5)(c)3.[2]

¶ 18. WISCONSIN STAT. § 146.81(4) defines patient health care records as: "[A]ll records related to the health of a patient prepared by or under the supervision of a health care provider[3] . . . but not those records subject to s. 51.30 . . . ."[4] Therefore, one question posed by this appeal is whether a record of D.D's conduct is a record "related to" her health. This question has not been previously addressed under WIS. STAT. § 146.82 for a person suffering from a mental health condition such as dementia. However, we have examined records relating to a person's mental health under WIS. STAT. ch. 51, and we have concluded that the Mental Health Act and its administrative rules severely restrict the release of information describing the conduct of an emotionally disturbed person, unless that individual

---

[2] Furthermore, WIS. ADMIN. CODE § HFS 132.45(5)(c)2. states:

> MEDICAL RECORDS—CONTENT. Except for persons admitted for short term care, to whom s. HFS 132.70(7) applies, each resident's medical record shall contain:
>
> . . .
>
> *(c)  Nursing service documentation. . . .*
>     2.   Initial care plan as required by s. HFS 132.52(4), and the care plan required by s. HFS 132.60(8).

[3] A nursing home is a health care provider as defined by WIS. STAT. § 146.81(1)(m) as it incorporates WIS. STAT. § 50.135(1).

[4] Neither party argues that Care Concepts is a treatment facility, pursuant to WIS. STAT. § 51.01(19), the release of whose patient records is controlled by WIS. STAT. § 51.30. But if it were, the patient records would then be WIS. STAT. ch. 51 treatment records and subject to the confidentiality provisions of § 51.30(4) and an analysis similar to that set out below. *See Billy Jo W. v. Metro*, 182 Wis. 2d 616, 514 N.W.2d 707 (1994).

consents to the disclosure. *See Daniel A. v. Walter H.*, 195 Wis. 2d 971, 983–84, 537 N.W.2d 103, 108 (Ct. App. 1995).

¶ 19. In *Daniel A.*, the parents of children who were allegedly sexually assaulted by a mental health patient who had been placed in the parents' home as a foster placement brought an action against the patient, the county, the private care provider and employees of the county. During that personal injury action, the parents sought to compel discovery by oral deposition of county employees concerning incidents of the patient's "sexuality" of which county employees were aware before and subsequent to placement in the parents' home. The county opposed the discovery requests on the grounds that the information was contained in treatment records and subject to privilege and confidentiality protections. We agreed and concluded that the employees could not be deposed about their knowledge of the patient's conduct, if it was obtained through records kept about his conduct, but that employees could be deposed where they obtained information through their own personal observations. *See id.* at 990, 537 N.W.2d at 111. In so doing, we implicitly concluded that a record of the conduct of a mental health patient recorded by health care providers was a treatment record, within the ambit of WIS. STAT. § 51.30(1)(b) and protected from disclosure, except as provided in § 51.30.

¶ 20. Although *Daniel A.* is not directly on point, its reasoning leads me to conclude that the recorded conduct of D.D., who suffers from a type of dementia, is related to her health and the care she is afforded by Care Concepts. Indeed, records of a mental health patient's conduct may be the only evidence that the health care provider has in deciding how to structure

care or a treatment plan best suited to that patient. Therefore, I conclude that writings about D.D.'s conduct are patient health care records within the ambit of Wis. Stat. § 146.81(4), whose disclosure without informed consent is regulated by Wis. Stat. § 146.82(2).[5]

### 3. Lawful Order of the Court.

¶ 21. The confidentiality of *all* patient health care records is established in Wis. Stat. § 146.82(1), which states:

> **Confidentiality.** All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient.

Because I have concluded that the records sought are patient health care records, they may be released without informed consent only under certain enumerated circumstances. *See* § 146.82(2). The majority relies on § 146.82(2)(a)4., "lawful order of a court of record," for its conclusion that the order for a release of some of the records did not violate § 146.82(2). However, the conclusion that the release was lawful because it was done by court order begs the question: Was the court's order lawful?

---

[5] Courts in at least one other jurisdiction have concluded that records of a mental health care patient's prior acts were confidential, in very similar circumstances. *See House v. Swedish-American Hosp.*, 564 N.E.2d 922, 923–24 (Ill. App. Ct. 1990) (concluding that records of a patient's "prior conduct" were protected from disclosure by the patient's rights of confidentiality).

¶ 22. No appellate decision has examined WIS. STAT. § 146.82(2)(a)4. to determine when court orders releasing patient health care records may be lawful. However, the circumstances under which WIS. STAT. ch. 51 treatment records may be lawfully disclosed through the use of a court order were discussed by the supreme court in *Billy Jo W. v. Metro*, 182 Wis. 2d 616, 514 N.W.2d 707 (1994).[6] There, the *Racine Journal Times* and others sought access to Billy Jo W.'s civil commitment court file, pursuant to WIS. STAT. § 51.30(3). The court reasoned that the statute provided no "precise guide" to what records the legislature intended to permit a court to release upon such a request. *See Billy Jo W.*, 182 Wis. 2d at 633, 514 N.W.2d at 711. But in its analysis, it enunciated the policy that underlies the legislation which affords privacy to mental health records. It reasoned that the stigmatization that individuals still receive when they suffer from a mental illness required limiting access to records which contain mental health information. *See id.* at 632, 514 N.W.2d at 711. That same policy, preventing the stigmatization of those with mental health problems, which the court identified as promoting the confidentiality of treatment records under ch. 51, applies equally to the information Crawford seeks

___

[6] *Billy Jo W.* arose from WIS. STAT. ch. 51 and its restrictions on the release of the treatment records of a mental health care patient. Therefore, it parsed the circumstances under which WIS. STAT. § 51.30(3) permits the release of treatment records "pursuant to lawful order" of a court. However, as the phrase, "lawful order," is identical to that used in WIS. STAT. § 146.82(2)(a)4., the reasoning of *Billy Jo W.* is very helpful.

about D.D., because she, too, may be stigmatized by relaying her conduct.[7]

¶ 23. In addition to articulating the policy that underlies the confidentiality of mental health records, the decision in *Billy Jo W.* also provides additional guidance for my analysis of Crawford's discovery requests. *Billy Jo W.* identified a method by which to determine when a court's order releasing otherwise confidential records is "lawful." It did so by comparing WIS. STAT. § 51.30(4), which governs access to an individual's treatment records, as it construed § 51.30(3), which governs access to the records of a civil commitment because both statutes permit release pursuant to "lawful order" of a court. After a lengthy analysis, it concluded that the directive, pursuant to "lawful order," must mean something distinct from the statutorily listed exceptions of § 51.30(4), but "substantially similar to those . . . enumerated exceptions." *See Billy Jo W.*, 182 Wis. 2d at 637, 514 N.W.2d at 713. The court in *Billy Jo W.* then went on to balance the interests of the public to information concerning a criminal proceeding, in which Billy Jo W. was a defendant, with the policies underlying circumstances sufficient to release records under § 51.30(3). However, *Billy Jo W.* is instructive for establishing the three components of a request to release patient information, which it reasoned were necessary before an order of a court was a "lawful order" under the statutes. They are: (1) a purpose similar in type to those listed in the statute; (2) information given only to a person who is effectuating such a purpose; and (3) information limited in amount

---

[7] *See also* ROBERT M. LEVY & LEONARD S. RUBENSTEIN, THE RIGHTS OF PEOPLE WITH MENTAL DISABILITIES (4th ed. 1999), for a good discussion of the many adverse effects that flow from disclosure of a patient's mental health records.

to only that which is necessary to achieve such a purpose. *See Billy Jo W.*, 182 Wis. 2d at 635–36, 514 N.W.2d at 712.

¶ 24.   I conclude that the reasoning in *Billy Jo W.* is very instructive. Therefore, I would apply a test similar to that set out in *Billy Jo W.* to determine if the release granted by the circuit court was afforded by a "lawful order," pursuant to WIS. STAT. § 146.82(2)(a)4. In order to conclude that the court's order was lawful, I would need to conclude that the purpose which the order serves is different from, but substantially similar to, those purposes enumerated in § 146.82(2) for which release may be had without the consent of the patient; that the person to whom the release was granted would effectuate such a substantially similar purpose; and that the amount of information released was only that necessary to effectuate such a purpose.

¶ 25.   Here, the circuit court ordered the release of information relating to D.D. in response to a WIS. STAT. ch. 804 discovery request, in a pending personal injury action by Crawford against Care Concepts. WIS CONSIN STAT. § 146.82(2) lists numerous purposes for which the release of patient health care records are authorized by the legislature without the patient's consent: *e.g.*, to conduct various types of audits, to better assist the care of patients, to facilitate research, etc. However, not one of the purposes listed in § 146.82(2) is substantially similar to providing information to a plaintiff in a personal injury action against a health care provider. Therefore, based on the reasoning of *Daniel A.* and *Billy Jo W.*, I conclude that Care Concepts should not be compelled to provide answers to the interrogatories that are the subject of this appeal, if to do so will cause it to review and relate information from

records kept on D.D. while she was in its care.[8] Accordingly, I also conclude that answers to the interrogatories were not ordered pursuant to a lawful order.

¶ 26.  Additionally, I would further conclude that an *in camera* inspection is not authorized by WIS. STAT. § 146.82. No portion of the statute permits a court to invade what are otherwise confidential records to assist a plaintiff in a personal injury action; and therefore, disclosure to the court under the circumstances presented by this case can never result in a "lawful order" under the statutes. Accordingly, an *in camera* disclosure can serve no purpose. Therefore, I dissent.

[8] In certain circumstances, the records of patients in nursing homes have privacy protections under federal law as well. *See* 42 U.S.C. § 1395i–3(a)–(h) (1993 & Supp. 1999). Because neither party brought federal statutes to the attention of the court, I do not address whether federal law has any application to Crawford's requests of Care Concepts.