Alisa ZEHETNER, Plaintiff-Appellant,

v.

CHRYSLER FINANCIAL COMPANY, LLC, Defendant-Respondent.

Court of Appeals

*No. 03–1473. Oral argument March 2, 2004.—Decided March 30, 2004.*

2004 WI App 80

(Also reported in 679 N.W.2d 919.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jennifer L. Bolger* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee. There was oral argument by *Jennifer L. Bolger*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arthur M. Moglowsky* of *Bass & Moglowski, S.C.*, of Milwaukee. There was oral argument by *Arthur M. Moglowsky*.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Alisa Zehetner appeals from the order granting summary judgment to Chrysler Financial Company, LLC, and dismissing her complaint on the merits, with prejudice. She argues that the circuit court erred in concluding that, under WIS. STAT. § 421.301(17) (1999–2000)[1] of the Wisconsin Consumer Act, she was not a "customer" and, therefore, that she lacked standing. Zehetner is correct. Further, we conclude that Zehetner also had standing as a "person" under WIS. STAT. § 427.105(1). Accordingly, we reverse.

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## I. BACKGROUND

¶ 2. According to the summary judgment submissions, on September 17, 1998, Zehetner and Torres Henderson-Thomas, her boyfriend and the father of her child, went to an automobile show at Wisconsin State Fair Park in West Allis where they offered to buy a car from Russ Darrow Madison, Inc. They both signed a Motor Vehicle Purchase Contract that, in the space titled, "PROSPECTIVE PURCHASER," listed both their names.[2] Henderson-Thomas then applied for credit to finance the purchase, but his credit application was denied. According to Zehetner's affidavit: "The salesman then informed us that Henderson-Thomas could 'borrow' my credit to gain approval for the sale. I made it clear to the salesman that I did not want to be a co-signer for the purchase, and he assured me that I would not be."

¶ 3. Zehetner and Henderson-Thomas then completed and signed a credit application as joint applicants,[3] Zehetner providing employment and credit reference information and listing her relationship as Henderson-Thomas' "fiancé." In her deposition, she explained:

---

[2] In her complaint, Zehetner alleged that she did not want to co-sign or co-own the automobile. In her affidavit and deposition, however, while acknowledging that she was a co-owner of the car, Zehetner maintained that she never wanted to co-sign for the purchase of the car. Irrespective of Zehetner's alleged intent to do otherwise, she did sign the Motor Vehicle Purchase Contract.

[3] The body of the credit application lists Henderson-Thomas as the "APPLICANT" and Zehetner as the "JOINT APPLICANT OR OTHER PARTY." On the signature lines, however, Zehetner signed as "APPLICANT" and Henderson-Thomas signed as "SPOUSE/JOINT-APPLICANT."

> [The salesman] said he was using my credit, borrowing my credit to get [Henderson-Thomas] approved. I knew he was tricking the system into approving it. I had no idea it was wrong or illegal or tricking Chrysler Financial . . . .
>
> . . . .
>
> I listened to what the salesman had to say. He was the representative from Russ Darrow, I assumed he knew what he was doing.

Utilizing the joint credit application, the salesman obtained approval from Chrysler Financial to finance the purchase.

¶ 4. In the course of the September 17 transaction, Zehetner signed three documents:

(1) Motor Vehicle Purchase Contract, listing Zehetner and Thomas-Henderson under "PROSPECTIVE PUR-CHASER."

(2) "EXPLANATION OF PERSONAL OBLIGATION," stating, in part, that Zehetner had "agreed to pay the total payments under a consumer credit transaction between" Henderson-Thomas and Chrysler Financial. It also states:

> You will be liable and fully responsible for payment . . . even though you may not be entitled to any of the goods . . . furnished thereunder.
>
> . . . You may be sued in court for the payment of the amount due under this consumer credit transaction even though [Henderson-Thomas] may be working or have funds to pay the amount due.

... This explanation is not the agreement under which you are obligated, and the guaranty or agreement you have executed must be consulted for the exact terms of your obligations.

The document also includes a section, "NOTICE TO COSIGNER," stating, in part:

You are being asked to guarantee this debt. Think carefully before you do. If the customer doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

. . . .

This notice is not the contract that makes you liable for the debt.

(3) "WISCONSIN TITLE & LICENSE PLATE APPLICATION," certifying that Zehetner was the co-owner of the car and specifying that Chrysler Financial was the secured party.

¶ 5. What proved critical, however, was a fourth document: the Retail Installment Contract. Although Zehetner's name, as well as Henderson-Thomas', appear at the top, Zehetner never signed it. And although the parties vigorously dispute various aspects of the conduct and intentions of Zehetner and the salesman, Chrysler Financial concedes that because Zehetner did not sign the Retail Installment Contract, she had no obligation to make payments under that contract.

¶ 6. Eventually, Zehetner and Henderson-Thomas parted ways, and Henderson-Thomas defaulted. In June 1999, Chrysler Financial contacted Zehetner demanding payment; ultimately, it named her, and Henderson-Thomas, in its small claims replevin action in Dane County. Although she did not have the car, and

although she believed that Henderson-Thomas was responsible for the payments, Zehetner accepted Chrysler Financial's representation that she was obligated to make them and that her credit rating would suffer if she failed to do so. Thus, between June 30, 1999 and January 10, 2000, Zehetner made six payments totaling $2,248.45.

¶ 7. Subsequently, Zehetner learned that Chrysler Financial had discovered what it now terms a "clerical error in checking to be sure that [she] had actually signed the Retail Installment Contract." Zehetner made no more payments and, as confirmed at oral argument before this court, Chrysler Financial neither sought additional payments nor refunded those she had made.

¶ 8. It is undisputed that between June 16 and August 3, 2000, the day before the Dane County replevin trial, Chrysler Financial knew that Zehetner had not signed the Retail Installment Agreement and, therefore, had no obligation to make any payments under that contract. It is also undisputed that Chrysler Financial failed to so inform Zehetner until August 3, 2000.

¶ 9. On August 2, 2001, Zehetner sued Chrysler Financial bringing six claims, five of which were later dismissed by stipulation. The remaining claim alleged that Chrysler Financial had violated WIS. STAT. § 427.104[4] by "engag[ing] in conduct which can reason-

---

[4] WISCONSIN STAT. § 427.104 provides, in part:

**Prohibited practices. (1)** In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, . . . where there is an agreement to defer payment, a debt collector may not:

. . . .

ably be expected to threaten or harass Ms. Zehetner by contacting her by telephone on numerous occasions to obtain payment on a contract for which she had no legal obligation to fulfill," "claim[ing] or attempt[ing] to enforce a right with knowledge or reason to know that the right did not exist[,]" telling Zehetner "that she was responsible for payments on the contract, and inform-[ing] her that her credit would be adversely affected if she did not make the payments on the contract."

¶ 10. Granting Chrysler Financial's summary judgment motion, the circuit court concluded: "Zehet-ner has no standing . . . because she is not a customer as designed [sic] by Section 421.301(17), which provides in relevant part: 'Customer means a person other than an organization who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes.' " We conclude, however, that the circuit court's interpretation of the statute was incorrect and, further, that Zehetner also had standing as a "person" under WIS. STAT. § 427.105(1).

(c) Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false;

. . . .

(g) Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer;

(h) Engage in other conduct which can reasonably be ex-pected to threaten or harass the customer . . .;

. . . .

(j) Claim, or attempt to threaten to enforce a right with knowledge or reason to know that the right does not exist[.]

## II. DISCUSSION

¶ 11. Summary judgment methodology is well known and need not be repeated here. *See* WIS. STAT. § 802.08(2); *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). Although we value a circuit court's analysis, we review a grant or denial of summary judgment *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987).

¶ 12. Whether a person has standing to participate in an action or proceeding is a question of law that we review *de novo. Wisconsin Hosp. Assn v. Natural Res. Bd.*, 156 Wis. 2d 688, 700, 457 N.W.2d 879 (Ct. App. 1990). Standing is not a question of jurisdiction, but of sound judicial policy. *Wisconsin Bankers Assn v. Mutual Sav. Loan Assn*, 96 Wis. 2d 438, 444 n.1, 291 N.W.2d 869 (1980). Under Wisconsins law of standing, we must determine whether the party seeking standing was injured in fact, and whether the interest allegedly injured is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *See Mogilka v. Jeka*, 131 Wis. 2d 459, 467, 389 N.W.2d 359 (Ct. App. 1986).

¶ 13. "The goal of statutory interpretation is to ascertain and give effect to the legislature's intent. To achieve this goal, we first resort to the statute's plain language. In the absence of statutory definitions, this court construes all words according to their common and approved usage[.]" *Granado v. Sentry Ins.*, 228 Wis. 2d 794, 799, 599 N.W.2d 62 (Ct. App. 1999) (citations omitted). We also review a circuit court's statutory

interpretation *de novo. State ex rel. Leung v. City of Lake Geneva,* 2003 WI App 129, ¶ 3, 265 Wis. 2d 674, 666 N.W.2d 104.

¶ 14. WISCONSIN STAT. § 421.301(17), in relevant part, states:

> "Customer" means a person . . . who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes . . . . A person other than a customer may agree to be governed by chs. 421 to 427 with respect to all aspects of a transaction and in such event such person shall be deemed a customer for all purposes of chs. 421 to 427 with respect to such transaction.

WISCONSIN STAT. § 427.105(1) provides, in part, that "[a] person injured by violation of this chapter may recover actual damages and the penalty provided." Although the parties construe them differently, they both contend that the relevant statutes are unambiguous. *See Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995) (mere fact that parties "interpret a statute differently does not in itself create an ambiguity"). At least for purposes of resolving the issues in this appeal, we agree.

¶ 15. The circuit court reasoned that because Zehetner "did not agree to be bound by the terms of the retail installment agreement" and "did not sign it," she did not qualify as a "customer" under WIS. STAT. § 421.301(17). We disagree. If the statutory definition of "customer" covered only those who *acquire,* among other things, personal property or credit, rather than those who also *seek* to do so, we might agree with the circuit court. Similarly, if the definition covered only those who seek, among other things, personal property or credit for their own, individual purposes, rather than

637

"for family or household purposes," we might agree. Clearly, however, the definition of "customer" is sufficiently broad to encompass Zehetner under the undisputed facts of this case.

¶ 16. As Chrysler Financial emphasizes in its brief to this court, Zehetner and Henderson-Thomas "had lived together," had a child, and indicated that they were engaged at the time they applied for credit. Indeed, *Chrysler Financial* reminds us: "The length of their relationship, their connection through their child, their apparent intention to marry and the need for support of the child show that Zehetner had a personal interest in helping Henderson[-Thomas] obtain an automobile." Clearly, therefore, when Zehetner provided her credit background, and when she signed the documents to facilitate the purchase, she was arguably seeking both personal property and credit for "personal, family or household purposes."

¶ 17. In reaching this conclusion, we are not defining "family" under the Wisconsin Consumer Act or, for that matter, suggesting any new or peculiar definition of "family" under any other statute. *See* WIS. STAT. § 421.301(32) (defining "Person related to" under the Act); *see also* WIS. STAT. ch. 767 ("Actions Affecting the Family"). Rather, we are simply acknowledging the obvious: § 421.301(17) addresses "personal, family or household *purposes,*" (emphasis added); unquestionably, when a woman is engaged to the father of her child, and when they are purchasing a car together, they apparently are doing so for anticipated personal, family and household *purposes.*

¶ 18. Chrysler Financial argues, however, that if Zehetner qualifies as a "customer," it could only be because she did indeed "intend[] to become obligated to Chrysler" and, therefore, its "actions in collecting the

debt could not amount to a violation of the act." We understand Chrysler Financial's frustration given the circumstances of this case, and we understand that, depending on the facts developed at trial, Chrysler Financial's equitable arguments may prove persuasive.[5] Here, however, we only decide whether Zehetner has standing to pursue her claim. Clearly, she does, notwithstanding any argument Chrysler Financial might make that, apart from the Retail Installment Contract, Zehetner still could be financially responsible for the car. *See* WIS. STAT. § 427.103(2) (" 'Debt collection' means any action, conduct or practice . . . in the collection of claims owed or due *or alleged to be owed or due* a merchant by a customer.") (emphasis added); *see also* 15 U.S.C. § 1692a(3) (2004) (defining "consumer" to include "any natural person obligated *or allegedly obligated* to pay any debt") (emphasis added).

¶ 19. WISCONSIN STAT. § 427.104(1)(j), provides: "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction . . . a debt collector may not . . . [c]laim, or attempt or threaten to enforce a right with knowledge or

---

[5] We also acknowledge Chrysler Financial's statutory argument that, even assuming Zehetner has standing, her claim is defeated by application of WIS. STAT. § 425.301(3) to what Chrysler Financial views as the undisputed facts. Section 425.301(3) provides, in part, that "a customer shall not be entitled to recover specific penalties . . . if the person violating chs. 421 to 427 shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The summary judgment submissions, however, establish numerous material factual disputes, resolution of which would be necessary to establish whether Chrysler Financial would prevail with such a defense.

reason to know that the right does not exist." The provisions of the Wisconsin Consumer Act "shall be liberally construed and applied to promote their underlying purposes and policies." WIS. STAT. § 421.102(1). One of the purposes is "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." § 421.102(2)(b). Another is "[t]o permit and encourage the development of fair and economically sound consumer practices in consumer transactions." § 421.102(2)(c). Certainly an attempt to compel a consumer to make payments in the absence of any legal obligation to do so could constitute an "unfair, deceptive, false, misleading and unconscionable practice" that could undermine the development of fair practices in consumer transactions.

¶ 20. Additionally, WIS. STAT. § 427.105(1), defining the remedies available under the Wisconsin Consumer Act, provides, in part, that "[a] *person* injured by violation of this chapter may recover actual damages and the penalty provided" elsewhere in the chapter. (Emphasis added.) It does not restrict recovery to "customers." And although Chrysler Financial, at oral argument before this court, maintained that the legislature simply erred in referring to "person" rather than "customer" in § 427.105(1), we see no basis for assuming such legislative inadvertence. Indeed, we must assume the opposite. *See State v. Olson*, 175 Wis. 2d 628, 641, 498 N.W.2d 661 (1993) (appellate court must assume that legislature purposefully selected statutory language); *see also Kett v. Community Credit Plan, Inc.*, 228 Wis. 2d 1, 14, 596 N.W.2d 786 (1999) (legislature's use of different terms in Wisconsin Consumer Act "shows a deliberate legislative intent to give meaning to the words").

¶ 21. Accordingly, we conclude that Zehetner, as a "customer" under WIS. STAT. § 421.301(17), and as a "person" under WIS. STAT. § 427.105(1), has standing to pursue her action.[6]

*By the Court.*—Order reversed.

---

[6] The parties also debate issues involving the statute of limitations and venue. The circuit court, however, addressed neither; we decline to do so at this time.