MILWAUKEE DEPUTY SHERIFF'S ASSOCIATION and
Scott Kuhtz, Plaintiffs-Appellants,

v.

CITY OF WAUWATOSA, Defendant-Respondent.†

Court of Appeals

No. 2009AP1924. *Oral argument May 17, 2010.*
*—Decided June 15, 2010.*

2010 WI App 95

(Also reported in 787 N.W.2d 438.)

† Petition for review denied 9-24-10.

206

208

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Linda S. Vanden Heuvel* and *Christopher J. MacGillis* of *Vanden Heuvel & Dineen, S.C.*, Germantown. There was oral argument by *Christopher J. MacGillis*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kevin P. Reak* and *Ann C. Wirth* of *Gunta & Reak, S.C.*, Milwaukee. There was oral argument by *Kevin P. Reak*.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Plaintiffs Milwaukee Deputy Sheriff's Association and Milwaukee County Deputy Sheriff Scott Kuhtz (collectively, "Deputy Kuhtz" unless otherwise noted) appeal a summary judgment order granting Defendant City of Wauwatosa's motion for summary judgment and a second order denying the plaintiffs' motion for reconsideration of the summary judgment order. Deputy Kuhtz argues that the circuit court erred by: (1) holding that the City did not

violate Wis. Stat. § 51.30(4) (2007–08)[1] when the Wauwatosa Police Department released Deputy Kuhtz's statement of emergency detention to the Milwaukee County Sheriff's Department; and (2) holding that the Sheriff's Association does not have standing.[2]

¶ 2. We agree that the circuit court erred when determining that the City did not violate Wis. Stat. § 51.30(4) when its police department faxed Deputy Kuhtz's statement of emergency detention to his employer, the sheriff's department. But we affirm the circuit court's order determining that the Sheriff's Association did not have standing. Accordingly, we affirm in part, reverse in part and remand.

### BACKGROUND

¶ 3. This case was decided on summary judgment. The facts set forth are undisputed by the parties.

¶ 4. In June 2005, Deputy Kuhtz attended a therapy session with Jill Turcott-Nielsen, a therapist in Wauwatosa, Wisconsin. Deputy Kuhtz was there for his first session, voluntarily seeking treatment for work-related stress and anxiety.

¶ 5. During the therapy session, in response to questions posed by Turcott-Nielsen, Deputy Kuhtz stated that he had thoughts of killing himself and two of his supervisors at the sheriff's department. Believing that Deputy Kuhtz really wanted to kill one of his supervisors, Turcott-Nielsen telephoned the Wauwatosa Police Department. The police department sent

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version.

[2] Deputy Kuhtz also appeals evidentiary rulings of the circuit court that we need not address because of our decision to reverse the grant of summary judgment.

numerous squad cars to the scene because the officers didn't know if Deputy Kuhtz was carrying his off-duty weapon; he was not.

¶ 6. Turcott-Nielsen told the officers on the scene that during Deputy Kuhtz's therapy session he told her that earlier that month he was so upset at work with his sergeant, Brett Meyers, that he wanted to put his hands around Sergeant Meyers' neck and squeeze as hard as he could, but instead Deputy Kuhtz left work for the day. He also said, referring to Deputy Inspector Richard Schmidt, that he really wants to "kill him."

¶ 7. Officer Robert Schumacher, one of the police officers dispatched to Turcott-Nielsen's office, proceeded to initiate a WIS. STAT. ch. 51 detention based upon Turcott-Nielsen's statement that Deputy Kuhtz had made threats to harm himself and others. Police officers took Deputy Kuhtz into custody without incident and transported him to the police department.

¶ 8. While at the police department, Officer Schumacher completed a Statement of Emergency Detention by Law Enforcement Officer form ("statement of emergency detention"). Following the procedure set forth in WIS. STAT. § 51.15, Officer Schumacher then transported Deputy Kuhtz to the Milwaukee County Mental Health facility and presented the staff at the facility with the statement of emergency detention, keeping a copy for the police department's records.

¶ 9. On the same day that Deputy Kuhtz was taken into custody, Wauwatosa Police Chief Barry Weber spoke to Wauwatosa Police Captain Jeff Sutter, who informed Chief Weber that officers had detained a Milwaukee County Sheriff's Deputy under WIS. STAT. ch. 51 because the deputy had talked of physically harming two of his supervisors at the sheriff's department. Chief Weber called the sheriff's department and spoke to

211

Deputy Inspector Schmidt. Chief Weber told Deputy Inspector Schmidt "about Deputy Kuhtz and his statements to the local therapist about having thoughts of harming two members of [the sheriff's] department." Chief Weber then agreed to send Deputy Inspector Schmidt a copy of the police report concerning Deputy Kuhtz's detention.

¶ 10. Ellin Palzewicz, a secretary at the police department, was then directed by either Chief Weber or Captain Sutter, to fax a copy of the police report on Deputy Kuhtz's detention to the sheriff's department. Palzewicz then faxed to the sheriff's department: (1) the police department fax cover sheet, marked "Confidential"; (2) the three-page police department incident report completed by Officer Schumacher; (3) the two-page statement of emergency detention completed by Officer Schumacher; and (4) a one-page document titled "Dispositions after Medical Clearance."[3]

¶ 11. Deputy Kuhtz was never asked and never gave informed written consent to the police department to fax copies of the above-listed documents. As a result of a sheriff's department investigation that began after the sheriff's department received the documents from the police department, Deputy Kuhtz was suspended for thirty working days without pay.

¶ 12. In June 2008, the Sheriff's Association and Deputy Kuhtz filed a declaratory judgment action against the City. The complaint alleged that the City violated Wis. Stat. § 51.30 when it "improperly released

---

[3] The cover sheet and the "Dispositions after Medical Clearance" are not included in the record. The parties do not contend that the release of either of those two documents violated Wis. Stat. § 51.30(4).

confidential records of [Deputy] Kuhtz's [Wɪs. Sᴛᴀᴛ. ch.] 51 . . . proceedings to the Milwaukee County Sheriff's Department."

¶ 13. Soon thereafter, in January 2009, the City filed a motion for summary judgment, asserting that the documents the police department faxed to the sheriff's department were not protected under Wɪs. Sᴛᴀᴛ. ch. 51 and that the Sheriff's Association lacked standing to sue. Deputy Kuhtz then filed a response to the City's motion for summary judgment and filed his own motion to strike certain facts from Officer Schumacher's affidavit, which the City filed in support of its motion. Following argument before the circuit court, the circuit court granted the City's motion and dismissed the complaint; the circuit court did not address Deputy Kuhtz's motion to strike. Deputy Kuhtz filed a motion for reconsideration, which the circuit court denied. Deputy Kuhtz appeals.

<h2 style="text-align:center">Sᴛᴀɴᴅᴀʀᴅ ᴏꜰ Rᴇᴠɪᴇᴡ</h2>

¶ 14. We review the denial or grant of a summary judgment motion *de novo*. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* We will reverse a decision granting summary judgment if the circuit court incorrectly decided legal issues or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). In our review we, like the circuit court, are prohibited from deciding issues of fact; our inquiry is limited to determining

whether a material factual issue exists. *Id.* "Any reasonable doubts as to the existence of a factual issue must be resolved against the moving party." *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980).

## I. Release of the Statement of Emergency Detention and the Police Incident Report

¶ 15. We first address whether WIS. STAT. § 51.30(4), prohibiting the release of "treatment records," prohibits the release of the statement of emergency detention and police incident report related to Deputy Kuhtz's detention and, if so, whether an exception to that statute permits the documents' release. The parties agree that both documents contained the same information. The circuit court determined that the information contained in both documents was covered by § 51.30(4) but that under *Schuster v. Altenberg*, 144 Wis. 2d 223, 424 N.W.2d 159 (1988), the police department had a duty to warn the persons threatened and that duty created an exception to the statute.

¶ 16. We agree with the circuit court to the extent that it concluded that *Schuster* held that a treating psychiatrist or psychologist has a duty to warn a person targeted by a credible threat. *See id.*, 144 Wis. 2d at 239–40. And we acknowledge that the City here was operating with the best of intentions—trying to protect the safety of the threatened individuals. But we conclude that our decision in *Schuster* does not create an exception to WIS. STAT. § 51.30(4) and accordingly, we reverse the trial court's contrary ruling.

214

¶ 17. Determining whether the treatment-records privilege set forth in Wis. Stat. § 51.30(4) attaches to the documents released by the police department requires application of that statute. Thus, we must construe the statute and apply it to the undisputed facts. This is a question of law that we review without deference to the circuit court. *See State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989).

¶ 18. The purpose of statutory interpretation is to discern the intent of the legislature. *McEvoy v. Group Health Coop.*, 213 Wis. 2d 507, 528, 570 N.W.2d 397 (1997). To determine this intent, we look first to the plain language of the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999).

¶ 19. Wisconsin Stat. § 51.30(4) provides for the confidentiality of mental health treatment records, stating in relevant part:

(a) *Confidentiality of records.* Except as otherwise provided . . . all treatment records shall remain confidential and are privileged to the subject individual. Such records may be released only to the persons designated in this chapter or . . . to other designated persons with the informed written consent of the subject individual as provided in this section.[4]

The statute defines " '[t]reatment records' " as "the

---

[4] The parties do not contend that the sheriff's department or its employees, under the facts of this case, are "persons

registration and all other records that are created in the course of providing services to individuals for mental illness . . . and that are maintained by the department [of health services], by county departments . . . and their staffs, and by treatment facilities." *See* § 51.30(1)(b).

¶ 20. The Wisconsin Supreme Court, in *Watton v. Hegerty*, 2008 WI 74, ¶ 22, 311 Wis. 2d 52, 751 N.W.2d 369,[5] held that the originals and copies of statements of emergency detention are treatment records under Wis. Stat. § 51.30(4), even when held in the possession of the police department, and are thereby privileged from disclosure without a patient's written consent.[6] Thus, the parties here all agree that the release of the statement of emergency detention was improper under § 51.30(4).

¶ 21. However, the City argued, and the circuit court held, that despite the *Watton* holding, *Schuster* created a public policy exception to Wis. Stat. § 51.30(4), permitting the disclosure of statements of emergency detention to warn a third party of harm. In *Schuster*, the Wisconsin Supreme Court held that if it was "foreseeable to a psychiatrist, exercising due care, that by failing to warn a third person or by failing to take action to

designated" under the statute to whom the documents may be released without written consent.

[5] *Watton v. Hegerty*, 2008 WI 74, 311 Wis. 2d 52, 751 N.W.2d 369, was decided on July 1, 2008, three years after the City released the records at issue here. But the City conceded before the trial court, in briefing, and at oral argument on May 17, 2010, that *Watton* applies to prohibit the release of the statement of emergency detention here, so we need not address its applicability.

[6] Wisconsin Stat. § 51.30(4)(b) sets forth twenty-seven exceptions to this general rule. The parties do not argue that any of those exceptions are applicable to the facts set forth in this case.

institute detention or commitment proceedings [with respect to his or her patient] someone would be harmed, negligence will be established." *Id.*, 144 Wis. 2d at 240. However, *Schuster* did not involve the confidentiality of mental health records under § 51.30(4). It was a negligence case in which the Court held that the complaint sufficiently pled a *psychiatrist's* duty to warn a targeted victim. *Schuster*, 144 Wis. 2d at 240.

¶ 22. Relying on *Schuster*, and noting that the issue was unique and uncontemplated by the drafters of the statute, the circuit court agreed with the City that the public policy of warning threatened persons overcame a mental health patient's statutory privacy rights. Thus, the circuit court found that the public policy reasoning set forth in *Schuster* created an exception to the confidentiality provision of WIS. STAT. § 51.30(4) and permitted the police department to release the incident report and statement of emergency detention.

¶ 23. Whether we believe, as the circuit court did, that public policy favors disclosure here, is not for us to decide. We are not a policy-making court. *See State v. Schumacher*, 144 Wis. 2d 388, 407, 424 N.W.2d 672 (1988). The issue before us is whether WIS. STAT. § 51.30(4) and our case precedent permit disclosure. We conclude they do not.

■■

¶ 24. WISCONSIN STAT. § 51.30(4) on its face, and as interpreted by the court in *Watton*, prohibits the release of copies of statements of emergency detention, even if in the possession of the police department. *See id.*, 311 Wis. 2d 52, ¶ 22. The City concedes as much. The majority in *Watton* reasoned that the statements were protected by "[t]he plain language of [WIS. STAT.] ch. 51 coupled with our obligation to construe statutes to avoid absurd results." *Watton*, 311 Wis. 2d 52, ¶ 22. The con-

currence reached the same result, but by construing the legislative purpose, determining that "[t]he legislature could not have intended that § 51.30(1)(b) [defining treatment records] be interpreted in a way that undermines or circumvents the carefully drafted legislative provisions set forth in § 51.30(4) limiting access to treatment records." *Watton*, 311 Wis. 2d 52, ¶ 42 (Abrahamson, C.J., concurring).

¶ 25. Here, the statement of emergency detention and the police incident report, containing the same information, were released by the City. Applying the reasoning in *Watton*, it would be absurd to construe the plain language of WIS. STAT. § 51.30(4) to permit release of the police incident report when it contains the same information as the expressly confidential statement of emergency detention, and further, release of the incident report would circumvent the carefully drafted legislative confidentiality provisions set forth in § 51.30(4).

¶ 26. Additionally, *Schuster* does not create an exception for the release of either or both reports. First, we note that *Schuster* imposed the duty to warn on the psychiatrist, not the police department. None of the parties has briefed, so we do not address, whether the duty to warn transfers to the police department. Second, we are not insensitive to safety concerns for individuals targeted by, what is believed to be, credible threats. However, here, the police department had the ability to convey a warning to the sheriff's department employees without violating the treatment-records privilege. For instance, either the therapist or the police department could have simply made a phone call to advise the sheriff's department that a threat had been made.[7]

---

[7] We note also that WIS. STAT. § 51.30(4)(b)4. permits a person to seek a court order permitting disclosure.

218

¶ 27. Third, and most significantly, we explicitly rejected the circuit court's conclusion that *Schuster* creates a public policy exception to Wis. Stat. § 51.30(4) in *Daniel A. v. Walter H.*, 195 Wis. 2d 971, 537 N.W.2d 103 (Ct. App. 1995). We held in *Daniel A.*, in no uncertain terms, that "[t]he *Schuster* decision does not authorize the court of appeals to add exceptions to the treatment-records privilege in § 51.30 . . . . We cannot add exceptions to a statutory privilege under the aegis of public policy." *Daniel A.*, 195 Wis. 2d at 999. That statement remains as true today as it was then. We will not and cannot revisit the issue. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (holding that "the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals").

¶ 28. The City argues on appeal that the circuit court's grant of summary judgment to the City was also justified based on Deputy Kuhtz's failure to show any damages. We do not address this issue because the City neither pled it nor argued it before the circuit court and the circuit court's order does not reach this issue. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980).

¶ 29. Accordingly, because the circuit court erroneously based its holding on what it characterized as a public policy exception to Wis. Stat. § 51.30(4) created by *Schuster*, a notion which we explicitly rejected in *Daniel A.*, we reverse the grant of summary judgment to the City and remand for further proceedings consistent with this opinion.[8]

---

[8] Deputy Kuhtz also argues that the circuit court erred when it: (1) did not consider his affidavit, submitted in sup-

## II. Standing

¶ 30. Next, Deputy Kuhtz argues that the circuit court erred when it found that the Sheriff's Association did not have standing to bring suit. He contends that the Sheriff's Association's interest "in representing its members, knowing the law to represent its members, and preventing negative employment actions from being taken against its members" is within the "zone of interest" protected by WIS. STAT. § 51.30 and gives it standing. We disagree.

¶ 31. Whether an organization has standing to participate in an action or proceeding is a question of law that we review *de novo*. *See Zehetner v. Chrysler Fin. Co.*, 2004 WI App 80, ¶ 12, 272 Wis. 2d 628, 679 N.W.2d 919. "Standing is not a question of jurisdiction, but of sound judicial policy. Under Wisconsin['] s law of standing, we must determine whether the party seeking standing was injured in fact, and whether the interest allegedly injured is arguably within the zone of interests . . . protected or regulated by the statute." *Id.* (citations omitted). Accordingly, we turn to WIS. STAT. § 51.30 to determine whether the Sheriff's Association has standing.

¶ 32. WISCONSIN STAT. § 51.30(4) states that "all treatment records shall remain confidential and are privileged *to the subject individual.*" (Emphasis added.) Further, § 51.30(9), the damages provision for a viola-

port of his motion for reconsideration, and (2) ruled upon the City's summary judgment motion without first ruling upon his motion to strike certain portions of Officer Schumacher's affidavit. Because our decision reverses the circuit court's motion for summary judgment, we need not address these claims.

tion of the treatment-records privilege, states that "[a]ny person, including the state or any political subdivision of the state, violating this section *shall be liable to any person damaged* as a result of the violation for such damages." (Emphasis added.) The focus of the statute is on the individual—the patient—whose treatment records have been released, and the damage to be protected from is the release of confidential information. The Sheriff's Association does not argue that it was injured in that manner.

¶ 33.   That the zone of interest to be protected by WIS. STAT. § 51.30 is personal to the patient whose records are released is further emphasized by our holding in *Olson v. Red Cedar Clinic*, 2004 WI App 102, 273 Wis. 2d 728, 681 N.W.2d 306, in which we held that a minor-patient's parents, who held the power to consent to the release of the minor-patient's treatment records, did not have an expectation of confidentiality as to information about them in the minor-patient's treatment records under § 51.30. *Olson*, 273 Wis. 2d 728, ¶¶ 13–14. We held that the nature of the privilege is such that it attaches only to the "one who receives treatment." *Id.*, ¶ 14. The Sheriff's Association did not receive treatment and does not have standing to sue under the statute.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.